LITTLE ROCK *v.* CITIZENS' STREET RAILWAY CO.

Opinion delivered April 2, 1892.

*Street railway—Duty to conform track to grade of street.*

> A city ordinance authorized the construction of a street railroad, but provided that the tracks of the railroad "shall be laid in accordance with the grades of the streets as now or as hereafter may be established," that whenever a change of grade is made, the railroad company, after due notice, "shall, at their own expense, conform and adjust the tracks of the railroad to such changed grades," and that the company "shall keep in good repair and order the space between the tracks or rails." *Held*, that the railroad company, after it has constructed its road in a street, is bound to raise its road-bed to a grade established by the city.

Appeal from Pulaski Chancery Court.

DAVID W. CARROLL, Chancellor.

The Citizens' Street Railway Company, a corporation running several lines of street cars upon the streets of the city of Little Rock, and especially upon Main street in said city, on April 26, 1890, filed its bill in equity against the city of Little Rock and others, and averred, among other things, that the city was a municipal corporation under the laws of Arkansas ; that the defendants, Leigh, Koers and Keith, were the board of commissioners of Improvement District No. 17, organized

for the purpose of grading and graveling Main street, in said city, from Twelfth street to Seventeenth street, over and upon which street, and within which district, the plaintiff had laid its track and constructed its road, and was constantly running its cars for the transportation of passengers ; that defendant Woodsmall was the contractor of the commissioners to do the work of improvement contemplated in the formation of the district ; that, in order to make said improvement, it would become necessary for the commissioners to fill up Main street, commencing at or near Twelfth street, with a fill of but a few inches, and extending thence south until between Thirteenth and Seventeenth street, where the fill would have to be about six feet ; that unless the rails of said road should be taken up and the fill made between them, in conformity with each side of the street, the road and rails would be left in a long hollow, some five feet wide, which at all times of rainfall will be submerged by water from the hill south and on said Seventeenth street, whereby its said road would be rendered unfit for use and be ruined ; that the commissioners had contracted with Woodsmall to fill only that part of the street within the district which was outside the track of plaintiff ; and that neither the commissioners nor the city intended to make the fill required between the tracks of the plaintiff, but that, on the contrary, the city had ordered plaintiff to take up its track in that district, and, at its own expense, make the fill between its tracks to conform with the grade established for the rest of the street, and had threatened the plaintiff that if it did not forthwith do so, it would declare its contract forfeited and would stop the running of its cars over its lines, to its irreparable injury ; that it was willing, and had always been willing, to take up its tracks in said district, so as to enable the said commissioners and their contractor to make the said fill, grade and improvement, and when made to relay it in con-

formity to said new grade, but said city and said commissioners refused to permit it so to do for said purpose, but threatened and were about to pull up and destroy said track, and to stop the running of cars over said road.

Plaintiff prayed the court to restrain the defendants from tearing up or removing its tracks in said improvement district, and that they be required to make the said fill on said street, in said district, between the tracks of the plaintiff, so as to conform to the grade of the rest of the street outside of said tracks.

A general demurrer was filed to this complaint, setting up the two grounds, (a) that the complaint did not set forth facts, sufficient to entitle plaintiff to any relief in the chancery court, and (b) that said court had no jurisdiction of the cause. The demurrer was overruled. The defendants electing to stand on their demurrer, the court entered a decree, in substance holding that the defendants were obliged to make the fill or cut required to bring that portion of the street occupied as a right of way by the railway company to the required grade; the railway company being required only to take up and replace the rails for this purpose, at its own expense. And the court granted an injunction as prayed in the complaint.

From this decree the defendants appealed.

*Morris M. Cohn* for appellants.

Under the ordinance and contract, it is the duty of the Street Railway company to conform and adjust its tracks at its own expense to the changed grades, including all necessary cuts, fills, etc. 4 Am. & Eng. R. R. Cases, 161; 26 *id.* 546; 32 *id.* 292; 138 U. S. 98.

*Eben W. Kimball* for appellee.

HEMINGWAY, J. The single question in this case is, whether the appellee, after it had constructed its road in a street, was bound to raise its road-bed, so as to conform to a change established by the city in the grade of

the street ; or whether it was bound only to adjust its rails after the city had raised the bed to conform to the changed grade.

The question arises upon a difference, not as to the extent of municipal authority, but as to the contract obligations of the railway.  The city contends that the railway was bound to raise that part of the street occupied by its track, while the railway contends that the city was bound to do that, and it was bound only to remove its track and to relay it upon the level of the street when raised.

The solution of the controversy depends upon the construction of the ordinance authorizing the railway to build its road in the streets, which, in so far as it affects or sheds light upon this cause, is as follows :

" Second.  That the tracks of the said railway shall be laid in accordance with the grades of the streets as now or as hereafter may be established.  And the party of the first part (the city) reserves the right to change or alter the grades of said streets, or any or either of them, or any part of either, whensoever it sees fit to do so, and shall not be liable to the parties of the second part for damages or losses that may be occasioned by such changes.  And whenever a change of grade is made, and after due notice by the party of the first part, the said party of the second part shall at their own expense conform and adjust the tracks of the railroad to such changed grades, said adjustment to commence immediately after such notice as aforesaid.

\*       \*       \*       \*       \*       \*

" Fourth.  The said parties of the second part shall keep in good repair and order the space between the tracks or rails, and two feet on either side of tracks on all streets hereafter paved, so as not to obstruct the passing, crossing or traveling of said streets by other vehicles.

\*       \*       \*       \*       \*       \*

"Sixth.    Said railway, with its appurtenances, shall be maintained in good order and repair by the parties of the second part (the railway company), etc.

\*        \*        \*        \*        \*        \*

"Ninth.    The party of the first part also reserves the right to take up and remove the rails of said railway whenever it shall be necessary for the repair and improvement of the said street or for the laying of water or gas pipes or sewer, or for other public purposes thereon, and such repair or improvements shall be made by the party of the first part without unnecessary delay, and the track shall be taken up and relaid by the parties of the second part at their own expense."

The second section has direct application to the question, and is appealed to for its determination. It contains three stipulations with reference to the rights and duties of the railway. It was bound to lay its tracks to conform to the grades established at the time they should be laid ; the city could change established grades without incurring liability to it; and whenever a grade should be changed, it was bound, upon notice by the city, to conform and adjust its tracks to the changed grade, at its own expense. Its duties relate, and are defined by reference, to grades "established" or "changed." The inquiry suggested is, what is meant by "grades?" Used in reference to streets it has two distinct meanings ; by the first, it signifies the line of the street's inclination from the horizontal ; by the second, a part of the street inclined from the horizontal ; Century Dictionary. That is, it sometimes signifies the line established to guide future construction, and at other times the street wrought to the line. In the first stipulation, the language used leaves little room for doubt as to its meaning. The track is to be laid in accordance with grades established—that is, in accordance with the line fixed by the city—and not in accordance with the street

wrought.  *Karst* v. *St. Paul, etc., R. Co.* 22 Minn. 118.

In the second stipulation the right to change the grades is reserved, and extends to all that are established, whether the streets have been wrought to conform to them or not.

There is nothing in the language of the third stipulation, or in the context, to indicate that the word was there used in a different sense; it is reasonable therefore to conclude that it was used in the same sense.

If this be true, it follows that when the railway undertook to conform and adjust its tracks to changed grades, it was intended that it should conform to such lines as should be established for grades, and not that it should conform to grades actually wrought in the structure of the street, and that the adjustment should begin immediately after notice. If it meant merely that the railway should adjust its tracks to the physical changes made in the street, it would seem strange that notice by the city to lay the track should have been provided for, and not notice to take up the track in order that the grade might be raised. For when the change was completed, the fact would be manifest, and no further notice to lay the track would be necessary; but as the city had to raise the grade occupied by the road, notice to the railway to take up its track would be necessary to its own protection as well as to prepare the street for the city's work. On the other hand, if it meant that, before the change was wrought in the street, the railway might be required to conform and adjust its track to the line established, it would seem reasonable and proper to provide for notice. For although established grades were changed, the city might not contemplate an immediate change in the structure of the entire streets, and public convenience might demand that the change of the part occupied by the railroad await the change of the residue, and, besides, it would be but fair that the railway should

have notice that the work was required. Therefore it would seem quite proper that the change in the roadbed should be made only on notice by the city. Furthermore, the provision that the work of adjustment should begin immediately after notice, and not when the grade was raised, indicates that the adjustment was to include raising the grade.

But, it is said, the railway is expressly required to conform and adjust its track to the changed grade, and is not thus required to raise or lower the bed on which it rests; from this it is argued that there was no intention to impose on it the latter duty. But the assumption of the higher includes all lower duties, and if the obligation to adjust its track can be met only by raising or lowering the roadbed, then the railway is bound by its agreement to do this. Moreover, the railway is as much bound to change its road to conform to changed grades as to lay it in the first place according to the grade then established. There is no express undertaking that it shall make fills or cuts in order to lay its track originally; but the undertaking is express that it will lay its track according to existing grades, and this, in the absence of other provisions, implies an undertaking to employ whatever means are necessary to that end. There was no other provision in the ordinance for raising the roadbed to the level of the grade in order that the railway could lay its track; the city did not undertake to do it, and as the railway agreed to lay its track with the established grade, and this could be done only by raising the street where it was below such grade, the railroad was bound in such cases to do it. So, likewise, when it agreed to conform its track to changed grades, it impliedly undertook to do whatever was necessary to effect such conformity; and there is no more reason for saying that the city should construct the bed to enable it to make the change, than that it should do so to enable

it to lay the track originally—a position for which the railway would hardly contend.

It may be said that when the railway undertook to lay its track according to established grades, it was contemplated that such grades corresponded with the actual level of the streets.   But this, we think, is not true.   It is a matter of common knowledge that establishing grades by ordinance has generally much outrun actual street construction, and that improvements have been made with reference to anticipated, rather than to existing, street conditions.   So that when the agreement was made, it must have been understood that it would be necessary to make some fills and cuts at the outset.   The establishment of grades is largely tentative, and, as appears from adjudged cases, subject to frequent modification.   The ordinance shows that the parties contracted with this fact in view, and in as much as such changes might, and probably would, precede, by a considerable time, changes in construction, they must have contemplated that fills and cuts would be required to maintain the tracks according to the grades established from time to time.   There is no express provision for making them; but the railway assumes duties which it can discharge only by making them, and thereby impliedly undertakes to make them.

While the authorities do not shed much light upon the question, some aid is derived from them.

In the case of the *District of Columbia* v. *Washington & Georgetown R. Co.*, 4 Am. & Eng. R. Cas. 161, the railway was bound by its charter to keep the space between its tracks " at all times well paved and in good order," and to change its railroad so as to conform to changes in grades ; and it was held that the railway was bound to do the grading on that part of the street occupied by its road, so as to conform to the change.   So in the case of *Ashland St. Ry. Co.* v. *City of Ashland*, 47

N. W. 619, the ordinance provided that the roadbed should at all times correspond with the actual grade of the streets, and in case the grade should be changed the company should relay its track to correspond to the grade ; and it was held that the company was bound to raise the grade of its roadbed. In neither of the cases cited was there any express stipulation that the company should raise the grade of its roadbed, but the obligation was implied—in the one case from the undertaking to change the railroad so as to conform to the changed grade, and and in the other from that to relay the track to correspond to such grade.

Though their verbiage is different, their undertakings are substantially the same as that in this ordinance —that the railway, at its own expense, would conform and adjust its tracks to such changed grades, and would keep the space between its tracks in good order and repair so as not to obstruct travel by other vehicles.

It is said that, by section four of the ordinance, the duty of the railway to keep the space between its rails in good order and repair applies only upon paved streets ; and from this it is argued that there was no intention to bind it to raise the grade of its roadbed upon unpaved streets. The argument proceeds upon a misconstruction of the section. By its provisions, the railway is bound to keep the space between its rails on all streets in good order and repair, so as not to obstruct travel in other vehicles ; and upon streets thereafter paved, it is further bound to keep in like condition the space of two feet on either side of its track.

It is further insisted that the ninth section of the ordinance, which provides that in certain cases the city shall make repairs and improvements, shows that it was not intended that the railway should raise the grade of its roadbed. If this section bound the city to make all repairs and improvements, the contention would be sound ;

but that it has no such meaning is obvious from the provisions of section four, which binds the railway to keep the space between its tracks in good order and repair so as not to obstruct travel in other vehicles.

These sections, with the second, should be construed together and in harmony, if it can be done ; looking to them with that view, we conclude that the fourth obligates the railway to make such repairs and improvements as are necessary to keep the roadbed so as not to obstruct travel in other vehicles ; the ninth obligates the city to make such improvements and repairs as it deems proper, and the railway is not bound by other provisions to make ; while the second binds the railway to lay its track to conform to grades then established, and to change its track to conform to changes in grade, which implies that it will raise the grade of its roadbed whenever that is necessary to adjust the track to the changed grade. The chancellor having ruled contrary to this view, the judgment must be reversed, and the cause remanded with directions to sustain the demurrer to the complaint and for further proceedings.