Argued April 4, reversed and dismissed April 27, rehearing denied
June 8, 1920.

# GILES v. ROSEBURG.

### (189 Pac. 401, 1119.)

**Municipal Corporations—Property to be Assessed Need not be
Described in Initiatory Proceedings.**

1. Under City of Roseburg Charter, Sections 73, 115, property to
be assessed for a proposed sewer not abutting upon the sewer need
not be described in the initiatory proceedings and the owners then
notified that their property would be assessed; notice at the assess-
ment stage of the proceeding giving owners opportunity to be
heard before assessments are actually made being sufficient.

**Municipal Corporations—Map Showing Property Benefited not
Necessary.**

2. Under City of Roseburg Charter, map by city engineer show-
ing property to be benefited by sewer improvement is not neces-
sary to the validity of the proceedings, however proper and fitting
that such a map be kept on file.

**Municipal Corporations—Property, Though not Abutting on Sewer,
may be Assessed.**

3. It is not necessary in order to justify an assessment upon
property that it actually abuts upon the sewer or be at the time
connected therewith.

[As to property subject to special sewer assessment, see notes
in Ann. Cas. 1915D, 384.]

**Municipal Corporations—Finding of City Council as to Benefits
Conclusive.**

4. Whether property was benefited by sewer is a question of
fact upon which the finding of the city council is conclusive, ex-
cept under special conditions.

### PETITION FOR REHEARING.

**Municipal Corporations—Sewer District Created—Notice—Property
Benefited—Resolution of Intention to Construct Sewer.**

5. Council of City of Roseburg was not required to create and
define sewer district, or give notice of the property benefited, at
time of passing resolution of intention to construct sewer, and was
not required to specify in such resolution the property benefited,
notwithstanding Roseburg City Charter, Section 111, requiring city
engineer or surveyor to file "plans and specifications for an appro-
priate sewer or drain," and providing that the council "shall de-
clare" its purpose to construct said sewer or drain describing the
same and the location theeof"; such provision having reference to
plans and specifications, and the location of the sewer itself, and
not of the district.

From Douglas: JAMES W. HAMILTON, Judge.

Department 2.

This is a suit brought by the plaintiff against the City of Roseburg to quiet title to certain lots in said city, and to enjoin the city from asserting and enforcing the lien of certain assessments made by the city, for the purpose of putting in a short piece of sewer in Flint's Addition to said city.

The plaintiff's property is not in Flint's Addition, but in West View Addition to the city. West View Addition joins Flint's Addition, and the nearest portion of the property in dispute is about one block and across two streets, from the sewer in question.

The city council, when it initiated the improvement, passed a resolution, as follows:

"Be it Resolved by the Common Council of the city of Roseburg that it is expedient and necessary to construct sewers at the following places in the city of Roseburg, for the relief of the property in the vicinity thereof, to wit: A 16-inch sewer on the south side of Lane Street to connect with the present 16-inch sewer on Lot 7, Block A, Flint's Addition, with the end of the 16-inch sewer on Lot 11, Block A, Flint's Addition; also a 14-inch sewer line from the west end of Lot 1, Block E, Flint's Addition, running in a westerly direction across Glen Street through Lots 11, 10, and 9 of Block A, Flint's Addition, to the intersection with the new 16-inch pipe above mentioned; that the city engineer be and he hereby is instructed to prepare plans, specifications and estimates for the proposed sewers and file the same in the office of the city recorder."

It did not at that time designate the property to be benefited and assessed by said improvement. The city engineer filed certain plans and specifications for the sewer, and there is introduced in

evidence by the city, with those plans, a map purporting to show, colored in yellow, the lots and property to be assessed for the construction of the sewer. The property, belonging to plaintiffs and in question here, is included in this map. The map purports to have been filed on September 6, 1916, the same day as the other plans; but the plaintiff makes a question as to whether it ever was really filed or kept on file in the recorder's office. Plaintiffs claim to have asked for it at the recorder's office, and that they were told there was no such plat; but about this, there is a conflict in the evidence.

On the eleventh day of September, 1916, the following resolution was adopted:

"Resolved by the Common Council of the City of Roseburg, that it is expedient and necessary, and the Council hereby proposes to construct a sewer in Block "A" Amended Plat of Flint's Addition to the City of Roseburg, Oregon, according to the plans, specifications and estimates of the City Engineer filed in the office of the City Recorder on the 6th day of September, 1916, which said plans and specifications and estimates are hereby approved and adopted.

"The entire cost of said sewer, including the cost of engineering, advertising, abstracting and clerical help in making the assessment, shall be assessed upon the property especially benefited thereby, as provided by the Charter of the City of Roseburg, and no part thereof shall be paid by the city.

"The estimate of the City Engineer of the probable detailed cost of said sewer is the sum of $750.24.

"Resolved that the City Recorder be and he is hereby directed to give notice of said proposed improvement, as provided by the Charter of the City of Roseburg."

Thereafter, the evidence shows that a notice, containing the above resolution, and continuing:

"Remonstrances against said proposed sewer construction may be made in writing to the common council and filed with the City Recorder within twenty days from the date of the posting of this notice"

—was posted by the recorder in three public places, as required by law. After the expiration of the 20 days, the city passed an ordinance providing for the construction of the sewer in accordance with the plans and specifications. This ordinance did not otherwise describe the property to be benefited and assessed, but contained the following provision:

"That the Common Council proceed, as by law required, to construct said sewer, and to ascertain and determine the cost thereof, and to assess each lot or part of lot, or other property especially benefited thereby, its share of such cost."

Thereafter, notice for bids was advertised and the contract let and the sewer constructed.

Still later, a schedule of the proposed assessment, describing the property to be assessed and the amount of each assessment, and describing, among others, the property in question here, duly assessed to the plaintiffs, was filed with the recorder, and notice was published setting forth said assessments, and calling for objection, if any, within 15 days from the posting of the notice.

Thereafter there was a remonstrance by the plaintiffs and other property owners, which was referred to a committee, who reported against the same.

After the filing of such report, the city council passed an ordinance making the assessment in question, and declaring it a lien upon the property. The

plaintiffs attack the proceedings upon the ground that the original resolution, declaring the expediency of the construction of the sewer, and the subsequent resolution, approving and adopting the plans and specifications of the engineer, did not describe the property of the plaintiffs, which was afterward. assessed, and did not give them any notice that such property would be involved in the proceedings.

REVERSED AND DISMISSED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Carl E. Wimberly* and *Mr. Ira B. Riddle,* with an oral argument by *Mr. Wimberly.*

For respondents there was a brief and an oral argument by *Mr. B. L. Eddy.*

BENNETT, J.—The only question presented in this case is whether or not, under the provisions of the charter of the City of Roseburg, the property to be assessed for a proposed sewer—where it does not abut upon the sewer, as in this case—must be described in the initiatory proceedings, and the property owners notified then, that their property would be assessed for its construction.

The provisions of the charter, which are pertinent to this controversy, are as follows:

"The Council shall have power and it is hereby authorized whenever it may deem that the public health, interest or convenience may require, to construct or repair and lay down all necessary sewers and drains of a character and capacity to provide a complete system of sewerage, together with all necessary manholes, catch-basins, and branches, and to levy and collect an assessment upon all lots and parts thereof and parcels of land especially benefited by such sewers and drains to defray the whole

or any portion of the cost and expenses thereof, and to determine what lands are especially benefited by such sewer, and the amount to which each lot or part thereof or parcel of land is benefited; and the determination of the Council concerning the construction of any payment for any sewer or drain shall be final.

"Whenever the Council shall deem it expedient or necessary to construct or relay any sewer or drain, it shall require from the City Surveyor or Engineer plans and specifications for an appropriate sewer or drain, with all necessary catch-basins, manholes and branches, and estimates of the work to be done and the probable cost thereof; and the City Surveyor or Engineer shall file such plans, specifications and estimates in the office of the City Recorder. If the Council shall find such plans, specifications and estimates to be satisfactory, it shall approve the same; or may amend and change the same as it may see fit. The Council shall thereupon declare by resolution its purpose to construct said sewer or drain, describing the same and the location thereof and including the estimate of the probable cost thereof. The action of the Council in declaring its intention to construct or relay a sewer or drain, directing the posting of notices thereof, and approving and adopting the plans, specifications and estimates of the City Surveyor or Engineer, may all be done in one and the same act.

"The resolution of the Council to construct or relay such sewer or drain shall be kept of record in the office of the Recorder, and shall be advertised by the Recorder for a period of ten days, by posting notices thereof in three conspicuous places in said city, or by publication thereof for a period of ten days in some weekly or semi-weekly or daily newspaper published in said city, which notice so published must be published at least three times.

"Within twenty days from the date of the first publication or posting of the notice required by the preceding section, the owner or owners of any property to be affected by said proposed sewer or drain, may file with the Recorder a written remonstrance

against the said proposed sewer or drain, and the Council upon hearing said remonstrance may, at its discretion, discontinue proceedings in said matter, or may overrule any and all remonstrances and objections, and shall have power and authority to order the construction of said sewer or drain or the repair or relaying of the same; and within three months from the date of the final publication of its previous resolution, may by Ordinance provide for the construction or relaying thereof, which shall substantially conform to the plans and specifications previously adopted."

In addition to this, Section 115 of the charter provides that the proceedings in the matter of the assessment shall be the same as provided in Section 73, and following of the charter, which provides how the assessment shall be made, and that notice of such assessment shall be given for ten days before the ordinance assessing the same is finally passed.

There is no question that these latter requirements were conformed with in this case.

There is no provision in the Roseburg City Charter for the formation of regular sewer districts, and no provision requiring specific notice to the property owner of the property to be benefited in the early stages of the proceedings, or at any time prior to the proceedings for the assessment. The only notice up to that time provided for by the charter, is a general notice that the sewer is to be constructed.

If a notice, describing the property to be assessed, is required at this stage of the proceeding, it must be implied from the general terms of the charter, or derived from general principles of constitutional law.

We think that such a requirement cannot be implied from the charter.

It seems very plain that the charter does not contemplate the exact fixing of the property to be benefited by the improvement, until a much later time in the proceedings.

Section 73 of the charter provides:

"Whenever any construction * * of any sewer, any portion of the cost of which is to be assessed upon the property benefited thereby, *is completed,* * * the City Recorder, together with the committee on streets of the common council, shall *thereupon* apportion the cost thereof upon the lots, parts of lots and parcels of land benefited thereby."

Up to that time the city council does not know, and has no way of knowing, what property is benefited by the improvement; and, of course, it would be impossible to give notice to the particular property owners that their property would be benefited thereby, and, therefore, that they would be assessed for the same.

1. If the city council was required to give notice to the particular property owners, in advance of the initiation of the proceedings, and it should turn out that some of the property—which was at first thought to be benefited—was not properly assessable; or if it should appear that other property, not at first thought to be benefited, should be included, the whole proceeding would fall to the ground, and have to be again initiated. Nor was any specific notice necessary for the protection of the land owner up to the time of the proposed assessment. Up to that time no lien had been fastened or attached to any particular property. Up to that time the city is simply proceeding to construct a sewer, and to provide for the cost of the same by assessment, against whatever property shall afterwards appear to be benefited thereby.

It is strongly urged on behalf of the respondents
that they were entitled to be heard, and to have
their "day in court" as it were, before their prop-
erty was assessed and a lien fastened upon it.

No doubt this is true. But the property owner
has his day in court, under the charter of the City
of Roseburg, and his opportunity to be heard, when
the proceeding for the actual assessment is reached.
At that stage of the proceeding, the charter provides
that a specific notice shall be served upon him, show-
ing the property which is to be assessed for the im-
provement.

In this case such notice was actually given, and
was effective, for the plaintiffs appeared and re-
monstrated, and after a hearing the remonstrance
was overruled. It was after this hearing that the
assessment against the property of plaintiffs was
actually made.

The proceedings under similar charters, for the
construction of sewers and the assessment of the
cost upon the property benefited, has been frequently
before the court.

In *Strowbridge* v. *City of Portland,* 8 Or. 67, it
was contended by the plaintiff that—

"The city council should first declare by ordinance
that the sewer is necessary, and describe its location,
*and define the district that is to be benefited and
charged with the cost of its construction.*"

It was held that this was not necessary and Judge
BOISE, delivering the opinion of the court, said:

"It is also urged by the appellant that the reso-
lution did not fix the lateral bounds of the district
to be charged with the cost of construction.

"From what has been said, it follows that the
council had power to proceed and lay down the
sewer, and then ascertain, by the method provided

in the proviso of Section 106, what property was directly benefited. So there is nothing in this objection. The proceedings of the council, as set out in the complaint, show that the same are a substantial compliance with the provisions of the charter providing for the construction of sewers. The view we take of Section 106 of the charter renders it unnecessary to notice any other points which were discussed in the argument.''

The matter was again before the court in *Paulson v. City of Portland,* 16 Or. 450 (19 Pac. 450, 1 L. R. A. 673), in which the Strowbridge case was followed by a divided court. The Paulson case was appealed to the Supreme Court of the United States and was affirmed: 149 U. S. 30 (3 L. Ed. 637, 13 Sup. Ct. Rep. 750, see, also, Rose's U. S. Notes).

In that case the opinion was written by Mr. Justice BREWER and is very instructive, and we think entirely conclusive upon all the questions presented here. We quote from the opinion, italicizing portions deemed especially pertinent.

''By ordinance 5068 it ordered the construction of the sewer, and directed what area should be drained into that sewer, and created a taxing district out of that area. *For these, no notice or assent by the taxpayer was necessary.* A sewer is constructed in the exercise of the police power for the health and cleanliness of the city, and the police power is exercised solely at the legislative will. So also the determination of a territorial district to be taxed for a local improvement is within the province of legislative discretion. * * By the same ordinance the city also provided that the cost of the sewer should be distributed upon the property within the sewer district, and appointed viewers to estimate the proportionate share which each piece of property should bear. *Here, for the first time in proceedings of this nature, where an attempt is made to cast upon his particular property a certain proportion of the bur-*

*den of the cost, the taxpayer has a right to be heard.* * * It is settled that, if provision is made 'for notice to and hearing of each proprietor, *at some stage of the proceedings,* upon the question of 'what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law.' "

Here, as we have seen, a notice, the sufficiency of which is not questioned, was given at the assessment stage of the proceedings. As was held by the Supreme Court of the United States in the Paulson case, that was the first time the property owner, as a matter of absolute constitutional right, could insist upon notice and opportunity to be heard.

2. It makes no difference, therefore, whether the map drawn by the city engineer, and showing the property to be benefited, was actually filed at the time it appears to have been filed or not, or as to whether it was kept on file in the recorder's office. Such a map was not necessary to the validity of the proceedings, however proper and fitting it may have been that such a one should be kept on file.

It is urged on behalf of respondent that the city charter provides that the original resolution, declaring the purpose of the council to construct a sewer, "shall describe the same *as to location thereof,*" and it is claimed that this amounts to a requirement, that the property to be benefited, as well as the sewer itself, shall be located by the resolution.

But we think this construction cannot be maintained. It is the sewer itself, and not the property to be benefited thereby, that the charter requires to be located. This seems plain and obvious.

The sewer itself seems to have been fully located in this resolution:

"A 16-inch sewer on the south side of Lane Street to connect with the present 16-inch sewer on Lot 7, Block A, Flint's Addition, with the end of the 16-inch sewer on Lot 11, Block A, Flint's Addition."

It is not claimed, as we understand it, that this description was not entirely sufficient to locate the sewer itself, and this, as we conclude, was all that was necessary in that regard in this particular resolution.

The plaintiffs, having had full notice and opportunity to be heard before the assessments were made on their property, and it not being necessary for the city council to fix the property benefited prior to that time, under this particular city charter, we think the proceedings of the city council must be upheld.

3. It is not necessary, in order to justify an assessment upon property, that it actually abuts upon the sewer, or be at the time connected therewith.

In *Beckett* v. *City of Portland*, 53 Or. 169 (99 Pac. 659), it is said:

"The general rule is that, where a municipality has authority to establish assessment districts and assess the cost of constructing sewers on property therein, it is not essential to the validity of an assessment that the property shall abut upon the streets or place where the sewer is laid. The question of benefits is one of fact, and, if it be determined by the proper tribunal that the property is specially benefited by the construction of the sewer, an assessment is proper to the extent of such benefit, whether the property is abutting or contiguous to the improvement or not.

4. Whether this property really was benefited by the improvement is a question of fact, upon which the finding of the city council is conclusive, except under special conditions not existing here.

This question, regarding street improvements, has very lately been fully considered by the court in banc in *Killingsworth* v. *City of Portland,* 93 Or. 525 (184 Pac. 248).

The judgment of the court below is reversed and the cause dismissed, with costs and disbursements of both courts to the defendant.

REVERSED AND DISMISSED.   REHEARING DENIED.

McBRIDE, C. J., and BEAN and JOHNS, JJ., concur.

---

Denied June 8, 1920.

PETITION FOR REHEARING.

(189 Pac. 1119.)

On petition for rehearing.   PETITION DENIED.

*Mr. B. L. Eddy,* for the petition.

*Mr. Carl E. Wimberly* and *Mr. Ira B. Riddle,* contra.

BENNETT, J.—5. A petition for rehearing has been presented in this case, and in the accompanying brief it is strenuously urged, that the decision in effect, repeals Section 111 of the city charter of the City of Roseburg, or reads out some provision of that section.

The particular provision of the section, which is thought to have been read out or repealed, is not set forth in the brief for rehearing, but we infer from the general line of argument that it is claimed the section contains some provision, requiring the council to create a sewer district, or to set out, at the time of the original resolution, the property which

96 Or.—30

will be benefited by the proposed sewer, and that notice of such property be given in advance of the construction of the sewer. There is no such provision in this section, nor, as far as we have been advised by counsel, anywhere in the charter. We quote Section 111 again in full, taking it from the brief of respondents:

"Whenever the Council shall deem it expedient or necessary to construct or relay any sewer or drain, it shall require from the City Surveyor or Engineer plans and specifications for an appropriate sewer, or drain, with all necessary catch-basins, manholes, and branches, and estimates of the work to be done and the probable cost thereof; and the City Engineer or Surveyor shall file such plans, specifications, and estimates in the office of the City Recorder. If the Council shall find such plans, specifications, and estimates to be satisfactory, it shall approve the same; or may amend and change the same as it may see fit. The Council shall thereupon declare by resolution its purpose to construct said sewer or drain, describing the same and the location thereof and including the estimate of the probable cost thereof. The action of the Council in declaring its intention to construct or relay a sewer, or drain, directing the posting of notices thereof, and approving and adopting the plans, specifications and estimates of the City Surveyor or Engineer may all be done in one and the same act."

There is not a word in the section which requires the council to create and define any sewer district, or to specify the property which will be benefited, or that any notice of a sewer district, or of the property benefited, shall be given at this stage of the proceeding. The plans and specifications which are to be required from the city surveyor, are plans and specifications *of the sewer itself,* and not plans of any sewer district, or of any property to be ben-

efited, and it is the location of the sewer itself, and not the location of' any sewer district, which is required to be given in the resolution, provided for in the latter part of the section.

"Shall declare its purpose to construct said *sewer* or drain, describing the *same* and the location thereof."

The sewer itself is one thing, and the sewer district (if there is one) or property benefited is quite another. The charter requires the resolution to give the location of the sewer, but does not require it to create a sewer district at this time, or to designate or locate the property benefited. This is as plain as the English language can make anything. We are not reading anything out of this section. On the contrary, we are taking it word for word exactly as it reads; and we have no more right to read anything *in* to the charter, than we would have have to read something out.

As we read the record, the city council did comply with every word of this section. It did require plans of the sewer itself, and did give its location, and did publish a notice of these things, as the charter required. This notice was not, and was not required to be, addressed to any particular person, nor was it required to describe any particular property or assessment district. It was in the nature of a notice to all whom it might concern. It was a notice to every taxpayer in the city, and to every person whose property lay in such a shape that it might be benefited, that the city was proposing to construct the sewer, and that all the conditions and assessments authorized by the charter, might follow.

Afterwards, and before the property to be assessed was directly affected in any way, or any lien

fastened upon it, the council was required to specify the property to be assessed, and to give the owners notice and opportunity to be heard. This gave such owners their "day in court" and opportunity to be heard, and fully satisfied all their constitutional rights. It seems to be conceded that this also was done. There is no provision of the charter, and no constitutional provision, requiring anything more.

The petition for rehearing is denied.

REVERSED. SUIT DISMISSED. REHEARING DENIED.

McBRIDE, C. J., BEAN and JOHNS, JJ., concur.