Argued March 3, modified March 29, rehearing denied April 26. 1927.

# A. M. AUSTIN v. TILLAMOOK CITY.

### (254 Pac. 819.)

**Municipal Corporations—Improvement Assessment will be Upheld, When Burden Does not Exceed Benefits and is not Disproportionate Between Owners.**

1. Assessments for street improvement will be upheld, whenever it is not obvious from nature of property and improvement that burden is in excess of benefits or disproportionate within district as between owners.

**Municipal Corporations—Court will not Nullify Council's Action Respecting Improvements, Unless Council Clearly Exceeds Constitutional Authority.**

2. Court will not nullify legislative action of city council in prescribing improvement district and method, unless council clearly exceeds constitutional authority.

**Municipal Corporations—Tax Sale Price is not Criterion of Market Value of Lots on Question of Confiscatory Character of Tax.**

3. Selling price at tax sale is not criterion of market value of lots, in owner's suit to quiet title against purchaser on ground that street improvement taxes were void as confiscatory.

**Municipal Corporations—Evidence Held to Show Property Benefited from Improvements in Excess of Tax.**

4. Evidence, in owner's suit to quiet title against tax sale purchaser on ground that tax was void as confiscatory, *held* to show that property benefited from street improvements in an amount exceeding tax imposed.

---

1.  See 25 R. C. L. 141.
2.  See 25 R. C. L. 99.

**Municipal Corporations—Court will Consider Decline in Real Estate Values in Determining Whether Improvement Tax was Confiscatory.**

5. In owner's suit to quiet title against purchaser at sale under taxes for street improvement, on ground that taxes were confiscatory, court will consider decline in real estate prices subsequent to 1920 as affecting valuations.

**Municipal Corporations—Council's Determination of Benefits to Abutting Property from Improvements is Conclusive, in Absence of Fraud or Mistake.**

6. Assessment for street improvement will not be set aside because of differences in judgment, as to benefits derived, between city council and abutting property owner; the determination by council being conclusive, in absence of fraud or mistake.

**Municipal Corporations—Failure to Mark Specifications Filed Held not to Vitiate Street Improvement Proceedings.**

7. Failure to mark plans and specifications as filed would not vitiate city council's resolution for street improvements, under evidence they were actually filed.

**Municipal Corporations—Establishing "Grade of Street," in Council's Resolution for Improvements, Referred to Marking Grade.**

8. The words "by establishing grade of street," in city council's resolutions for street improvements, referred to establishing lines to guide in construction.

**Municipal Corporations—Resolution Stated Specifications and Bids Required Sufficiently by Reference to Specifications on File With Recorder.**

9. City council's resolution for street improvements sufficiently stated specifications and bids required by reciting that improvements should be in accordance with charter, resolutions and ordinances and with plans and estimates filed with city recorder.

**Municipal Corporations—Council's Acceptance of Improvement Work as Conforming to Contract Binds Property Owners, in Absence of Plain Error.**

10. City council's acceptance, in good faith, of street improvement work as according to contract is binding on property owners, in absence of convincing evidence of error.

**Municipal Corporations—Street Improvement Proceedings cannot be Attacked Collaterally for Mere Irregularity After Improvement Made.**

11. Proceedings for street improvement cannot be attacked collaterally after completion, upon ground that prior proceedings were merely irregular.

6. See 25 R. C. L. 140.

Municipal Corporations—Improvement Tax Sale of Lots for Less
    Than Value, Under Defective Sale Notice, Vacated and Re-
    sale Ordered.

12.   Sale of city lots for street improvement taxes at less than
value was set aside and resale ordered where notice was defective.

---

Municipal Corporations, 28 Cyc., p. 978, n. 73, p. 1012, n. 21, p. 1022,
n. 23, p. 1028, n. 74, p. 1055, n. 13, p. 1122, n. 16, 17, 18, p. 1161,
n. 16, p. 1170, n. 87.

From Tillamook: GEORGE R. BAGLEY, Judge.

Department 2.

Plaintiff brings this suit to quiet title to lots 7 and
8, in Block 11, in Stillwell Second Addition to the
Town of Lincoln, now Tillamook City, Tillamook
County, Oregon.

The defendant by its answer sets up in detail all
of the proceedings of the city for the improvement
by grading and paving of Third Street, to which
plaintiff's lots are adjacent, the letting of a contract
and making of the improvement, the assessment of
the cost thereof upon the abutting property, the ap-
portionment of the cost to plaintiff's lots, the docket-
ing of such assessment in the docket of city liens, and
the sale of the lots by the city on account of the fail-
ure of plaintiff to pay the assessment, all in conform-
ity to the charter of the city.

The plaintiff for reply to the defendant's answer,
admits several of the formal allegations thereof, and
denies other allegations; and further avers that the
proceedings by the city for the improvement of the
street, as set forth in the answer, are illegal and void,
for reasons which will hereafter be referred to.

The trial court found that the benefits to plaintiff's
property on account of the improvement of the street,
was not sufficient to warrant the assessment, and that
the proceedings by the city were confiscatory, and

entered a decree quieting plaintiff's title to the lots. Defendant appealed.

Tillamook City was incorporated by an act of the legislature approved February 13, 1893. At the elections held October 19, 1914, and October 14, 1919, the legal voters of the city, exercising the powers conferred upon them by the Constitution adopted amendments to that portion of the charter providing for the improvements of streets, at the expense of property especially benefited thereby. The portion of the charter, as existing during the time of the proceedings involved herein, is embodied in the amended Article VII. Section 5, Article VII of the Charter of Tillamook City provides as follows:

"Whenever the Common Council shall deem it expedient to improve any street or streets, or any part thereof within Tillamook City, it shall require from the city engineer plans, specifications and estimates therefor, and where the proposed improvement is one for the paving of a street, the plans, specifications and estimates shall be for two or more kinds of appropriate improvement, at least one of which must be a non-patentable kind, and the engineer shall furnish as a part of said estimates a statement of the probable total cost of each class of improvement, and such plans, specifications and estimates shall be filed by the city engineer in the office of the city recorder. If the common council shall find such plans, specifications and estimates to be satisfactory, it shall approve the same, and shall determine the boundaries of the district benefited and to be assessed for such improvement, and declare its purpose and intention of making said improvement, and determine the portion of the street to be improved, and the assessment district established shall be designated as Local Improvement District No. ———. The action of the Common Council in declaring its intention to improve any street, or any part thereof, approving and adopting the plans,

specifications and estimates of the city engineer, determining the boundaries of the improvement district and of the portion of the street or streets to be improved, may all be done at the same meeting of the common council and by one and the same resolution. Upon the passage of such resolution by the common council the recorder shall give notice by publication for not less than ten days from date of the first publication, by publishing for not less than two issues in a weekly newspaper published in Tillamook City, inviting bids for making said improvement. Each bid submitted must be accompanied by certified check equal to 10 per cent of the amount of the bid. When such bids are received, and the amount of the lowest responsible bid for each kind of improvement has been ascertained, the council shall, by resolution, determine the kind of improvement to be made and the lowest responsible bid. When the common council shall have determined the kind of improvement to be made and the lowest responsible bid submitted therefor, the recorder shall return to the respective bidders whose bids have been rejected the checks submitted with their bids, and shall retain the check accompanying the bid accepted and adopted for the improvement by the common council. Such check shall be held until such time as a remonstrance is filed sufficient to defeat said improvement, the contract and bond executed as required by the provisions of the charter of Tillamook City, or other applicable law, or ordered returned by the Common Council, and shall be forfeited to Tillamook City if the successful bidder shall fail to enter into contract with approved bond for the carrying out of his bid if required so to do, provided that no bids shall be called for, for the establishment or change of a street grade, and the expense of any such establishment or change of grade shall be paid out of the general fund of the City, but such establishment or change of grade shall be made after notice as prescribed for other improvements.''

Section 10 of that Article, in so far as material, reads as follows:

"After the contract and bond are executed for the making of any street improvement as herein provided, and the common council has thereby ascertained and determined the actual cost of such improvement including a sum not to exceed 10 per cent of such construction price for engineering expenses, acquiring descriptions of property, publishing notices, superintendence and other special expenses connected with the making of such improvement, the council shall apportion the cost of such improvement upon each tract, lot or part thereof liable therefor. Such apportionment for any improvement, except the construction or repair of a sidewalk or of a drain or sewer, shall be made in the following manner; each lot or part thereof, or tract where the property is not divided into lots, within the limits of the improvement district abutting or adjacent to any street improved, shall be liable for the full cost in the proportion thereof hereinafter mentioned, of making said improvement upon half of the street in front of and abutting upon or adjacent to said lot, tract or part thereof, and for a proportionate part of the cost of improving the street intersections in the improvement district, to be determined by dividing the improvement district on each side of the street improved into zones. Each zone to contain one-third in depth of the improvement district on that side of the street being improved. The property lying in the first zone next to the street being improved, shall be assessed with 55 per cent of the cost of the improvement. The property lying in the second zone with 30 per cent of the cost, and the property lying in the third zone, or zone farthest from the street improved, with 15 per cent of the cost."

The trial court found, among other things as follows: That the plaintiff was the owner of the lots described; at the time of the initiating of the pro-

ceedings by Tillamook City, Third Street, upon which
the real property of the plaintiff abutted, was im-
proved with a rough macadam surface and was in
condition for ordinary travel and use. While the
proceedings of the city council were in progress for
the improvement of Third Street, the mayor and
members of the city council knew, or should have
known, of the fair market value of the property of
plaintiff; that the real property of the plaintiff, with
the buildings situate thereon, was, on March 8, 1920,
and during the time the city was pursuing the pro-
ceedings of the improvement of Third Street, of the
fair market value of $1,500.

That beginning with the eighth day of March, 1920,
the city initiated and carried on proceedings for the
improvement of Third Street, by causing the city
engineer to prepare and file with the recorder of the
city, plans and specifications for the improvement of
Third Street, from the west line of Stillwell Avenue
to the west boundary of Tillamook City, and esti-
mates of the probable cost thereof, which plans and
estimates were duly examined and approved by the
city council. Thereupon the boundaries of the dis-
trict, to be benefited by such improvement, and as-
sessed with the cost thereof were determined, and the
city council declared its purpose and intention of
making said improvement, determining the portion of
the street to be so improved, and declared the dis-
trict so established should be designated as "Local
Improvement District No. 10," and pursuant thereto,
and to notice duly given, invited bids for making said
improvement, and upon bids submitted, duly accepted
said bid and adopted a resolution authorizing the im-
provement of the street, and caused notice thereof
to be given in the manner prescribed by the funda-

mental law of the city, to which no remonstrance was filed pursuant to the provision of the charter.

Thereafter the mayor and recorder of the city, pursuant to the authority of a resolution of the council, entered into a contract with the Oregon Contract Company for the making of the improvement, in accordance with the proceedings of the city, its charter and its resolutions, the plans and specifications and the bid presented by the Oregon Contract Company, and approved and accepted by the defendant in the sum of $36,348.87; and thereafter, for the purposes of defraying costs and expenses of engineering, publication of notice, superintendence and other special expenses of the improvement, the common council added the sum of $2,543.08, making the total cost of the improvement $38,891.95. Thereafter the common council caused said sum to be apportioned within the limits of the improvement district upon the properties supposedly benefited thereby, and apportioned upon the property of plaintiff $549.59 upon said lot 8, and $549.59 upon said lot 7, as its proportion of the costs and expenses of the improvement of Third Street abutting thereon, and by appropriate proceedings by resolution after giving notice, assessed said sums against said property for the improvement. That during the pendency of the proceedings the plaintiff protested to members of the city council that the improvement, if carried on, and the cost assessed to the abutting property, would be a confiscation of plaintiff's property. That the assessment was duly docketed in the city lien docket and notice to the property owners in the improvement district was given, and an opportunity to bond the property for the payment thereof, in ten equal annual installments by application filed within thirty days after the

entry of the lien and notice thereof, but the plaintiff did not make such application.

That thereafter on November 10, 1920, a warrant for the collection of the assessments upon the plaintiff's property, among others, was duly issued to the city marshal, and the marshal of the city advertised the real property for sale, and the same was sold to the defendant city, and after the expiration of one year a conveyance was executed by the marshal to the defendant of the real property of the plaintiff, but that the notice of sale of the property was not given for a sufficient length of time.

That the defendant had entered into a contract to sell the property for $900, upon the payment of $100 cash and the balance of the purchase price to be paid $100 per annum, covering a period of eight years, with interest at 6 per cent; that the plaintiff has been in possession of the real property during the time of such proceedings. The court further found:

"That the cost of the improvement of said Third Street upon which the property of the plaintiff abutted and apportioned upon the property of the plaintiff, was and is the sum of $1100.00, and said improvement adjacent to and abutting upon plaintiff's said property, did not benefit the same in excess of the sum of $200; that such property was of such market value and was so situated that the property of the plaintiff could not be benefited to the extent of the cost of said improvements, and the market value thereof was not and could not be increased by reason of said improvement to any greater extent than the sum of $200."

MODIFIED.    REHEARING DENIED.

For appellant there was a brief over the name of *Messrs. Barrick & Hall,* with oral arguments by *Mr. C. W. Barrick* and *Mr. Roy F. Shields.*

For respondent there was a brief and oral argument by *Mr. T. H. Goyne.*

BEAN, J.—The proceedings for the improvement of the street in question were commenced in March, 1920, and the improvement was made during that year. It appears that the matter had been under consideration for some time and different kinds of improvement had been considered, such as the width of the pavement. It was finally proposed to lay a thirty-six foot concrete pavement with an unimproved eight-foot parking strip in the center, making the total width of the actual pavement twenty-eight feet. The plaintiff, Austin, appears to have favored a sixteen-foot pavement and protested to the individual members of the common council of the city against the improvement as finally proposed. As the trial court found, no remonstrance was filed against the improvement.

At the proper time a regular apportionment of the cost of the improvement was made and the plaintiff was duly notified and given an opportunity to make objections to the apportionment of the assessment to his lots. He made no such objections, and the assessment was made and docketed in the city lien docket. On August 1, 1922, plaintiff filed the complaint in this suit, which is a collateral attack upon the proceedings taken by the city authorities for the improvement.

We concur in the findings of the learned trial judge, to the effect that the proceedings were regular and valid, except as to the notice of sale of the property by the city marshal. We are not able to concur in the opinion of the trial court that the cost of the improvement largely exceeded the benefits to plaintiff's property so as to render the same confiscatory or

void; or that the improvements adjacent to and abutting upon the plaintiff's property did not benefit the same in excess of the sum of $200.

1, 2. Before referring to the testimony, it may be helpful to notice the well-settled rule of law pertaining to the question. The better doctrine deducible from adjudged cases, both state and federal, is that in such matters the assessment will be upheld whenever it is not patent and obvious from the nature and location of the property involved, the district prescribed, the condition and character of the improvement, the cost and relative value of the property to the assessment, that the plan or method adopted has resulted in imposing a burden in substantial excess of the benefits, or disproportionate within the district as between owners. When the common council of a city has exercised its legislative discretion and prescribed a district and adopted a method, it ought to be plain and indisputable that it has exceeded its constitutional authority before the court would undertake to set at naught its declared will. Such announcement, in effect, was made after a very thorough discussion by Mr. Justice Wolverton in the case of *King* v. *Portland,* 38 Or. 402, 429 (63 Pac. 2, 55 L. R. A. 812, 5 Mun. Cor. Cas. 158). This case was affirmed in 184 U. S. 61 (46 L. Ed. 431, 22 Sup. Ct. Rep. 290). In *Hughes* v. *City of Portland,* 53 Or. 370, at page 394 (100 Pac. 942), Mr. Justice R. S. Bean records the following language:

"The extent to which the property is benefited and the proportionate share of the cost of the improvement which shall be charged against it is left to the judgment of the council, and, when it has exercised its judgment, its decision—in the absence of fraud or demonstrable mistake of fact—is conclusive, except

as a right of appeal may be given by the charter or unless it has proceeded upon an erroneous principle of law. *Lincoln* v. *Street Commissioners,* 176 Mass. 210 (57 N. E. 356).''

In the case of *Colby* v. *City of Medford,* 85 Or. 485, at page 540 (167 Pac. 487), we find the language of Mr. Justice HARRIS as follows:

''It is now too late to object to the amount of the assessment against the Stailey property. The council levied the assessment after first finding 'that the special and peculiar benefit accruing upon each lot * * and in just proportion to benefits' to be the amount so assessed. There is no charge of fraud. Stailey admits that his property has received some benefit from the improvement; and this admission coupled with the fact that there is no charge of fraud renders the finding of the council conclusive in this suit.'' Citing many authorities.

In *Giles* v. *Roseburg,* 96 Or. 453, at page 467 (189 Pac. 401, 1119), Mr. Justice BURNETT uses the following language:

''Afterwards, and before the property to be assessed was directly affected in any way, or any lien fastened upon it, the council was required to specify the property to be assessed, and to give the owners notice and opportunity to be heard. This gave such owners their 'day in court' and opportunity to be heard, and fully satisfied all their constitutional rights. It seems to be conceded that this also was done. There is no provision of the charter, and no constitutional provision, requiring anything more.'' See, also, 25 R. C. L., p. 94, § 14.

3. The findings of the trial court refer to the fact that the city attempted to sell the lots involved for the sum of $900. It is at once apparent that such sale is no criterion of the market value of the lots after the improvement of the street, as the city could

only sell what it purchased at the sale for the assessment, and litigation was to be expected, or at least was possible. It was in the nature of a forced sale. It was like purchasing any tax title.

4. In order to support his contention the plaintiff Austin testified in his own behalf, fixing the valuation of lot 7, before the improvement, at $350 and the valuation after the improvement at $800, an increase in valuation of $450. As noted above, the assessment against it was $549.59, or only about $100 more than the plaintiff estimates the benefit, which he admits he received from the improvement. He named the valuation of the other lot (8) before the improvement at $400, and its valuation after the improvement at $850, an increase of valuation of $450. The assessment against this lot was also $549.59, or only $100 more than the amount of the benefit which the plaintiff admits that he received from the improvement.

5. The testimony of the plaintiff must be considered from the language he used in testifying, as fixing the valuation of the lots after the improvement at the time he testified, or at least as greatly influenced by the conditions at that time. He testified in February, 1924, or more than three years after the improvement.

It is a well-known fact that in 1920, when the improvement was made, prices of everything including real estate were high, and that they depreciated rapidly during a few years thereafter. There is but little competent impartial testimony fixing the value of these lots. There were two other suits instituted by property owners similar to the case at bar, and they are dependent upon the result in this case. The plaintiffs in the three cases testified regarding

the value of the lots, to the effect that the improvement of the street did not increase the value of the adjacent lots any, or but little. The difference in the estimates of the value of the lots, before the improvement, and after the pavement was laid, ranged from nothing to about $150 to $200. This testimony is not convincing. The county assessor was called as a witness for plaintiff and testified as to the assessed valuation of plaintiff's lots, which does not establish the market value of the same. If this testimony of the assessor should be taken as indicating anything, it will show that the assessed value after the improvement was more than two and one-half times as much as it was before the street was improved. The value of the lots seem to be referred to by the witness as separate and distinct from the buildings thereon. Plaintiff's witness estimated the value of the house and barn on the lots at $1,500. The defendant did not introduce testimony as to the comparative values of the lots before and after the street improvement, but from the plaintiff's figures the city submits in its brief that taking the two lots together with the buildings, before the street improvement the property was worth $2,250, and after the improvement it was worth $3,150, the total assessment against the property being $1,099.18, leaving a net value of $2,050.82, after deducting the assessment.

6. An assessment of this kind will not be set aside on account of a difference in judgment as to the benefits derived between the common council and a property owner whose property is abutting upon the street and is affected by the assessment. The determination by the common council as to the amount of the benefit derived from such an improvement, in the absence of

fraud or mistake, is conclusive: *Houck* v. *Roseburg,* 56 Or. 238, 244 (108 Pac. 186); *Wagoner* v. *La Grande,* 89 Or. 192, 201, 202 (173 Pac. 305); *Killingsworth* v. *Portland,* 93 Or. 525, 529 (184 Pac. 249); *Withnell* v. *Ruecking Const. Co.,* 249 U. S. 63, 71 (63 L. Ed. 479, 39 Sup. Ct. Rep. 200).

7. Plaintiff contends that the resolution of the common council, declaring its intention to improve the street did not conform to the city charter in that it "was based upon plans, specifications and estimates" which were never made or filed. The city engineer was a civil engineer of about twenty years' experience. He was requested by the council to make the plans and specifications, for the improvement and estimates of the cost thereof. He testified that such plans, specifications and estimates were made and left in the recorder's office. The resolution of the council recites that they were made and duly approved and filed with the recorder. They were used and followed by the contractor in doing the work. It appears that the lady who was then the recorder and who is now deceased did not place filing marks on the document, and the plaintiff, who states he is a civil engineer, could not find the plans and specifications. Such failure to mark the instruments "filed," or that they were misplaced later, did not vitiate the proceedings: 28 Cyc. 1012; *Smith* v. *Jefferson,* 75 Or. 179, 187, 188 (146 Pac. 809); *Giles* v. *Roseburg,* 96 Or. 453, 463 (189 Pac. 401); *Wagoner* v. *La Grande,* 89 Or. 192, 207 (173 Pac. 305). Plaintiff did not inquire of the contractor for the plans and specifications. They were probably being used in doing the work when sought by plaintiff.

8. Plaintiff also challenged the resolution for the reason that it calls for improvement to be made, in part, by establishing the grade of the street, but the same was not done in these proceedings. The common council by its resolution declared its intention to improve a portion of Third Street, "by establishing the grade of said street"; by rolling the roadway thereof; "by laying thereon a concrete, asphaltic concrete, or asphaltic cement roadway." It is clear that the words in the resolution "by establishing the grade of said street," has reference to establishing the lines of the street to guide in the construction thereof, or, in common parlance, in marking the grade. See *City of Little Rock* v. *Citizens' Co.*, 56 Ark. 28 (19 S. W. 17); 4 Words & Phrases, 3142, "Grade of Street."

9. Plaintiff also complains that the resolution did not specify the thickness of the pavement and did not state sufficient specifications. The resolutions referred to the plans and specifications on file in the office of the recorder and contain the following recitation:

"All of said improvements to be made in accordance with the charter, resolutions and ordinances of Tillamook City, and in accordance with the plans and specifications and estimate of work therefor, made and prepared by the City Engineer of Tillamook City, Oregon, filed in the office of the City Recorder of said Tillamook City."

Plaintiff alleges that the notice calling for bids did not call for more than one kind of improvement. The notice calls for bids for the improvement of the street, "in accordance with the plans and specifications thereof now on file with the city recorder," consisting of grading and paving the same. The notice is sufficient.

10. Plaintiff was not at the time actively engaged in civil engineering. He made a survey of the grade and lines of the street, which differs from that made by the city engineer. We cannot decide from the record that the work of the city engineer was wrong. There was a substantial compliance with the city charter. The council in good faith accepted the work as being in accordance with the contract. Such acceptance is binding upon the property owners: *Chance* v. *Portland,* 26 Or. 286 (38 Pac. 68); *Duniway* v. *Portland,* 47 Or. 103, 113 (81 Pac. 945); *Rubin* v. *Salem,* 58 Or. 91, 96, 97 (112 Pac. 713); *Hendry* v. *Salem,* 64 Or. 152 (129 Pac. 531); *Lawrence* v. *Portland,* 85 Or. 586, 594 (167 Pac. 587); *Ukase Inv. Co.* v. *Portland,* 95 Or. 176, 179 (186 Pac. 558).

11. The plaintiff does not show that his assessment was increased by any error or alleged errors in establishing the grade of the street upon the ground, or in any of the proceedings herein. See *Wingate* v. *Astoria,* 39 Or. 603, 606 (65 Pac. 982, 6 Mun. Cor. Cas. 815). Proceedings for the improvement of the street cannot be collaterally attacked after the improvement has been made upon the ground that some of the prior proceedings were merely irregular. The plaintiff asserts that Section 5, Article VII of the Charter requires more than one bid to be submitted. A reference to this section above quoted does not bear out this contention. No fraud is shown on the part of the city council in the proceedings. .

12. The decree of the Circuit Court will be modified as follows: The decree quieting plaintiff's title to the lots will be reversed. The sale of the lots by the city marshal will be set aside and a resale ordered. The assessment against plaintiff's two lots for the street

121 Or.—26

improvement is declared valid and the amount thereof a lien upon the plaintiff's lots.

In view of the erroneous sale of the lots by the city and the circumstances of the case, neither party will be awarded costs in this suit.

MODIFIED. REHEARING DENIED.

BURNETT, C. J., and McBRIDE and BROWN, JJ., concur.