## IMPROVEMENT OF MAIN HIGHWAYS BY STATE AID.

Common Pleas Court of Clark County.

ELIZABETH HAMLET ET AL. *vs.* THE BOARD OF COUNTY COMMISSIONERS OF CLARK COUNTY ET AL.*

Decided, June, 1922.

*Roads—Constitutionality of Statutes Covering Construction of Main and Intercounty Highways—Proportion of Cost of Hard Surfaced Roads to be Borne by Abutting Owners is a Political and Legislative Question—Due Process of Law with Reference to Assessments against Abutting Owners—Discretion of County Commissioners and State Highway Department.*

1.  Sections 1191, 1204 and 1214, General Code, providing for the construction of main highways, inter-county roads, and state aid therefor, do not violate the Fourteenth Amendment to the Constitution of the United States, prohibiting laws depriving persons of property without due process of law.

2.  The fact that county commissioners may, under these sections, apply for state aid and proceed to the construction of the improvement without a petition of the abutting property owners, or without notice to such property owners, does not render the act unconstitutonal.

3.  The provision that notice must be given abutting property owners, and a hearing had on their complaint against an assessment for the improvement, before the same is levied upon their land, and further the fact that they may have recourse to the court to enjoin the illegal levy or collection of assessments, accords them the protection of "due process of law."

4.  The Legislature has delegated to the county commissioners and the state highway department discretion in the construction of roads and the levying of assessments, which will not be interfered with by the courts, unless a clear abuse of discretion is shown.

5.  What may be the proper burden to be borne by the abutting property owner in the construction of hard surfaced roads, is a political and legislative question, and the acts of the proper authorities will not be enjoined so long as the assessments do not exceed the benefits, or the limit fixed by the statute.

*Stafford & Arthur*, for plaintiffs.

*Donald Kirkpatrick*, Pros. Atty, *John G. Price*, Atty-General of Ohio, and *William J. Myers*, of Columbus, for defendants.

*Affirmed by the Court of Appeals.

GEIGER, J.

The plaintiffs being joint owners of certain real estate abutting on either side of the roadway leading from New Carlisle in a southwesterly direction to a point upon the National Pike known as Stringtown, seek a permanent injunction against the board of county commissioners of Clark county, and Leon C. Herrick, Director of the Department of Highways, to prevent the issuing of bonds for the improvement of this stretch of road by the building of a hard surfaced highway.

The proceedings of the board of county commissioners are set out in the petition, and it is alleged that the defendants propose and intend to build, and are taking steps to build, either a re-inforced concrete road at an estimated cost of $45,000, or a bituminous macadam road, at an estimated cost of $40,000, which the plaintiffs allege will not be for the best interests of the public, but on the contrary will be detrimental thereto.

The answers of the State Highway Commissioner and the board of county commissioners are similar, and admit many of the allegations of the petition, and set out the details of the proceedings before the board of county commissioners and the Department of Highways and Public Works under which they seek to proceed to construct the work.

The answers state that any assessment made upon the lands of the plaintiffs on account of the proposed improvement, will be based on the actual cost of the improvement, and after full notice to the plaintiffs and other affected land owners, of the proposed assessment, and that an opportunity will be given all to oppose the assessment.

It is claimed by plaintiffs, first, that Sections 1204 and 1214, under which the commissioners claim to act, are unconstitutional and contravene the 14th Amendment of the Constitution of the United States, and Article I, Section 1, of the Bill of Rights.

It is further claimed that it would be an abuse of discretion, which the court should enjoin, for the county commissioners to tear up and destroy an already existing highway capable of service to build up the hard surfaced structure. It is further alleged the county commissioners have not proceeded properly, in the manner which is pointed out more at length.

The plaintiffs assert that Sections 1204 and 1214 are each un-

constitutional for the reason that they provide for an assessment of plaintiff's property, "without due process of law."

In the case at bar, there was no petition filed by the abutting property owners, but the action was taken by the commissioners under the provisions of the latter part of Section 1204, providing that they may, without presentation of a petition, make application for state aid for the improvement.

It is urged that if the commissioners acted without a petition, and without notice to the abutting property owners, or those likely to be assessed for the improvement, in the matters which are preliminary to the final assessment, that the assessment ultimately to be made will be made without due process of law.

Counsel cite many cases which it will be impossible to review here in detail, but which have all been examined.

It must be kept in mind, that the money required to pay the assessment is the private property which cannot be taken from the owner without due process of law. The ordering of the improvement of the public highway adjacent to private property, is not in itself the imposition upon that private property of an assessment to pay for the same.

It is urged, however, that Section 1214 provides arbitrarily that 10 per cent. of the cost of the improvement shall be a charge upon the property abutting on the improvement, provided the total amount assessed against any owner of abutting property, shall not exceed 33 per cent. of the value.

It must be conceded that a special assessment to pay for a public improvement cannot exceed the benefits which such improvement is to the property assessed. The fundamental principle underlying an assessment made on property for the cost and expense of a local improvement, is that the property is specially benefited by the improvement beyond the benefits common to the public, and that the assessment of the property to the extent of these benefits violates no constitutional right of the owner, and is just and proper, but it can in no case exceed the benefits without impairing the invioability of private property. *Malsh v. Barron, Treas.,* 61 O. S., 15.

It is urged that the arbitrary assessment of 10 per cent. of the improvement upon the abutting property owner and the

permissible assessment of a larger per cent., violates the constitutional protection afforded the property owner.

It will, however, be observed, that the statute provides that the assessment shall not exceed 33 per cent. of the valuation of such property for the purpose of taxation, and it must further be clear that such assessment must not violate the constitutional protection that the assessment shall not exceed the special benefits conferred by the improvement. Although the statute states that the minimum assessment of 10 per cent shall be placed upon the abutting property owner, such assessment is further restricted by the statutory provision that it shall not exceed 33 per cent. of the value of the property, and of the constitutional provision that it shall not exceed the special benefits.

The statute must be construed in the light of these further limitations, and if 10 per cent. of the improvement exceeds either 33 per cent. of the value of the property or the amount of the special benefit, to that extent such 10 per cent. must be reduced.

It is, however, urged that the property owners rights are violated because the improvement may be ordered or construction made, without notice to the abutting property owner, and without the right to him to be heard upon the preliminary question.

No right is violated or property taken until the assessment is made upon the property.

Section 1214 provides that the commissioners shall cause the surveyor to make tentative apportionment of the amount to be paid by the owner specially assessed which apportionment shall be made according to the benefits accruing to the land so located. Before this estimate is adopted, notice shall be given by publication, and if any property owner desires to make objection, he may do so, and the commissioners shall hear the same and act as an equalizing board, and may change the assessment, if it is necessary to make the same just and equitable.

In other words, the statute provides that before the assessment becomes a lein upon the taxed property, an estimate must be made by the county surveyor, according to the benefits, and thereupon the property owner may be heard, and the commissioners have the power to act upon the same as an equalizing

board, and they may change the assessment to make the same just and equitable.

Clearly this provides for a hearing before the abutting property owner is actually assessed for the improvement. It is claimed, however, that the commissioners act only as a board of equalization, to adjust between the various property owners the amount so assessed, but the commissioners have also the further duty to determine whether or not the assessment in any way violates the statutory or constitutional rights of the property owner, and they, after publication and hearing, may change the assessment, and either approve the assessment as reported by the surveyor, or as modified by them.

It seems clear therefore, that no assessment can be made against the abutting property owner for an improvement until there has been an opportunity given to him to be heard.

The property owner is further protected by the general provision of Section 12075, which provides in substance, that the courts may enjoin the illegal levy or collection of taxes and assessments. The property owner has, under the provisions of this section, the right to have the entire matter examined and reviewed in a court of competent jurisdiction, and his rights protected.

In the case of *Caldwell* v. *Village of Carthage,* 49 O. S., 334, it is held that where land is appropriated for an improvement, that the assessment on the abutting property owner to pay the cost thereof, without the passage, notice and publication of such preliminary resolution, will not thereby be a taking of property without due process of law, in violation of Section 1 of the XIVth Amendment to the Constitution of the United States.

It is there stated that due process of law implies a due course of legal procedure, according to those rules and forms which have been established for the protection of private rights. If the validity of an assessment is called in question, an opportunity must have been given to resist it, either by allowing a hearing before the imposition thereof, or by providing for an appeal to a court of law afterwards.

The statute which gives a person against whom taxes are assessed a right to enjoin their collection, and have their validity judicially determined, is due process of law. It is not possible

to hold that a party has, without due process of law, been deprived of his property, when, as regards the issues affecting it, he has, by the laws of the state, a fair trial in a court of justice, according to the modes of proceeding applicable to such a case.

The court, in speaking of Section 12075, which permits a party to enjoin the illegal collection of taxes, says:

"An opportunity is here afforded to establish the invalidity of the tax or assessment; and with such privilege, if judgment is rendered against the property owner in the suit, it cannot be properly said that his rights of property have been determined without due process of judicial investigation."

Before the abutting property owner may be assessed he has the right to be heard by the commissioners and has the protection of the statute and of the Constitution, that his assessment shall not exceed a certain proportion of the value of his property, or shall not exceed the special benefits conferred upon his property by the improvement, and further, he has the right to go into the court of common pleas and enjoin the illegal assessment of the tax, in which event the entire procedure by which the tax was assessed, may be reviewed by a competent court.

It is therefore impossible to conceive that the property owner is deprived of his property without due process of law.

The question has been decided in numerous federal cases, among which may be cited *French* v. *Barber Asphalt Company,* 181 U. S. Sup Ct. Rep., 324, wherein it is held that an apportionment of the cost of a street pavement upon the abutting property, without any preliminary hearing as to benefit, may be authorized by the Legislature, and will not constitute the taking of property without due process of law.

In *Pendleton* v. *City of Portland,* 184 U. S., 61, it is held that property is not taken without due process of law by an assessment for the costs of an improvement where such cost is apportioned according to the benefits, and a hearing upon the question of benefits, and an opportunity to contest the assessment is given.

In the case of *Voight* v. *City of Detroit,* 184 U. S., 115, it is held that failure to provide for a notice and opportunity to be

heard on the question of what land shall be included in an assessment district and what shall be the maximum assessment, does not make the law unconstitutional, as a denial of due process of law, since his rights are protected by the opportunity to be heard on the question of the amount of the assessment.

In *Goodrich* v. *City of Detroit*, 184 U. S., 432, it is held that notice to the owners of land which may be assessed for a local improvement, need not be given of the proceedings to make the improvement in order to constitute due process of law, if none of their property is taken for that purpose, and they have notice and opportunity to be heard on the question of the assessment of their property.

In *Hibben* v. *Smith*, 191 U. S., 310, it is held that due process of law is afforded the owner of property assessed for a local improvement, where there is opportunity to be heard before the body which is to make the assessment, although the decision of that body after hearing, is conclusive.

In the case of *Londoner* v. *Denver*, 210 U. S., 373, it is held that a charter provision making conclusive the finding of the council that a proper petition for the improvement has been filed, does not deny due process of law in regard to the Fourteenth Amendment, although such finding is made without notice.

Mr. Justice Moody, at page 378, says, in substance, the question is whether the charter authorizing the finding without notice to the land owners, denies to them due process of law. We think it does not. The proceedings from the beginning did not include any assessment, although they laid the foundation for the assessment, which might or might not subsequently be made.

Clearly, all this might validly be done without hearing to the land owners, provided a hearing upon the assessment itself is afforded.

The 4th syllabus of this case, finding what is not due process of law, is interesting, but it seems to this court that the case at bar is not so limited as the act therein criticized.

Cases could be multiplied, and many decisions of state courts added to those federal decisions already cited, but it does not appear to the court to be necessary.

The court can easily distinguish the case of *State, ex rel.*, v.

*Commissioners,* 54 O. S., 333, cited by counsel for plaintiffs, from the case at bar.

The court is unable to agree in the view of counsel for plaintiffs that the sections criticized are unconstitutional, and must hold that the same properly safeguard the interests of abutting property owners.

The next important question presented is that the improvement of the road is unnecessary and an abuse of discretion upon the part of the county commissioners calling for the exercise of equity powers of the court.

Briefly, the evidence in the case shows that the mile and a half of road in question connects the already improved National pike with the enterprising village of New Carlisle. A number of witnesses testified that this improvement would be of no benefit to the adjacent property; that the road now in use is in excellent condition, being a well kept gravel road; that a portion of the road was constructed as water bound macadam; that on one side of said road for some distance are cement walks, and on either side of the road for like distance is a row of shade trees; that for about one mile the property of petitioners abuts on both sides of the road, but for the remaining distance other property owners abut upon the road, whose property had already been assessed for the construction of the improvement of the National pike; that as to the property owners already assessed, a public fund was raised in the village of New Carlisle to relieve these once burdened property owners from a further road assessment; that the plaintiffs in this case are not paying under the assessment for the National pike, and are not relieved by the public subscription.

It is in evidence that the road during the spring months was soft and became rough, but that this has been repaired by subsequent dragging; that the county is expending $150.00 per month to keep the road in proper repair.

Those urging the construction of the road insist that while a gravel road, if constantly repaired, will bear the summer traffic, that it will be at considerable public expense, and that the road cannot survive hard usage during the spring months.

There can be no question but that under proper conditions, in proper places, gravel roads are highly satisfactory, but it is like-

wise true that on a main highway or a much traveled roadway, a gravel road will not support the burden imposed on it by modern traffic.

Good policy may dictate that such improvements be delayed until the price of construction is decreased, and such considerations should have proper weight with those having control of the highways.

The property owners complain that as tax-payers in the state, county and township, they are called upon to pay the road tax, and that it is unjust to them to impose an additional tax as abutting property owners.

How much special benefit there is to agricultural land arising from the fact that it abuts upon a hard surface road, is a question upon which there is great variety of opinion. It is certain that the land will not produce larger crops on account of the road, and for the purpose of hauling crops from the farm, it is apparent it is not worth the amount assessed to the farm.

On the other hand, it is quite certain that lands abutting on hard surfaced roads have a higher value than lands of equal fertility which do not abut on such road.

It is the old question that has been long discussed in reference to the improvements of the streets of a municipality.

What will be the ultimate judgment in reference to agricultural land is a question difficult to predict.

It is quite apparent that the general public traveling upon a hard surfaced road is much more benefited on account of such facilities, than is the abutting land owner, and this is recognized when the general public is assessed 90 per cent. of the cost of construction.

Hard surfaced roads are comparatively new, and legislation must adjust itself gradually to the new conditions, the solution of the question being to determine what is the just burden to be imposed upon abutting property owners, and what is the burden that should be borne by the general public. In Eastern States the entire expense is frequently borne by general taxation.

This whole matter is a political one, to be dealt with by the Legislature. The Legislature has delegated to the constituted authorities the right to fix an assessment not less than 5 per cent. on each side of a public improvement subject to the consti-

tutional limitation that that amount shall not exceed the benefits, and also has given to the county commissioners the right to impose, under certain conditions, an additional burden.

It has been clearly demonstrated that on certain highways there must be a hard surfaced road; that on other less traveled highways gravel roads are highly desirable. Into what class the road in question may fall, is not for the court, but for the designated authorities to determine.

The court is of the opinion that the matter is entirely up to the county commissioners as part of the political organization of the state to whom has been delegated authority over county roads, and that the court has no right to restrain them in the reasonable exercise of this authority.

It must therefore follow that the court must refuse to interfere in this matter, only suggesting that it might be well to test out at this point, the durability and economy of the gravel road under the conditions that there exist which call for relatively heavy traffic.

Decree accordingly.