# KING *v.* PORTLAND CITY.

**ERROR TO THE SUPREME COURT OF THE STATE OF OREGON.**

No 307.   Argued November 18, 19, 1901.—Decided January 27, 1902.

Under the facts of this case, and the interpretation given of the charter of the city of Portland by the Supreme Court of the State of Oregon, this Court is of opinion that the plaintiffs in error have not been deprived of their property without due process of law.

THE case is stated in the opinion of the court.

*Mr. Martin L. Pipes* for plaintiffs in error. *Mr. Arthur P. Tifft* was on his brief.

*Mr. Joel M. Long* for defendants in error.

MR. JUSTICE MCKENNA delivered the opinion of the court.

The object of this suit was to restrain the enforcement of certain street assessments levied upon the property of the plaintiffs in error, under the charter of the city of Portland, Oregon.

The question presented is whether the ordinances under which the assessments were made deprived plaintiffs in error of their property without due process of law, and thereby violated the Fourteenth Amendment of the Constitution of the United States.

The assessments were sustained by the trial court, and its

judgment was affirmed by the Supreme Court of the State, (63 Pac. Rep. 2,) and the case was then brought here by writ of error.

The charter of the city was passed by the legislature in 1898, (Special Session, 1898, p. 101,) and the provisions for improving streets are found in sections 126 to 161 inclusive. They were summarized by the Supreme Court of the State as follows:

"By section 127 the common council are authorized to improve streets. By section 128 the common council are not authorized to improve any streets until they pass a resolution of intention so to do, and describe the improvement, which resolution shall be posted for ten days, and published for ten days, and also posted on the street. All these notices shall state the fact of the passage of the resolution aforesaid, the character of the work proposed, and the time within which written objections or remonstrances may be made. Section 130 provides that if no remonstrance is filed by a majority of the property owners the common council shall be deemed to have acquired jurisdiction.

"Section 131 provides that the auditor shall immediately transmit this ordinance to the board of public works.

"Section 132 requires the city engineer to file with the board estimates and specifications. When these are filed they shall give notice that they will let the contract to bidders.

"Section 133 provides that proposals for doing the work shall conform as near as possible to estimates prepared by city engineer.

"Section 136 provides that the city auditor shall prepare an apportionment of the expenses of the street work.

"Section 137 provides that when the work is so far completed as to enable the board to determine the cost of the whole thereof, the city engineer shall file written acceptance of the work completed. Thereupon the board shall advertise in an official paper for six days, stating when and where any objection may be heard to the said improvement, and any person may at this time appear and object to the acceptance thereof. If no objections are filed, or if the objections are overruled and the street is accepted, the board shall report the same to the common council.

" By section 138 the auditor is required to prepare an assessment and report the same to the common council.. Section 138 also provides how the cost shall be apportioned, viz. : Each lot or part thereof within the limits of the proposed street improvement abutting upon the street shall be liable for the full cost of making the improvement upon one-half of the street in front and abutting upon it, and also for the proportionate share of improving the intersections of two streets.

" Section 139 provides that when the probable cost of any improvement has been ascertained or determined, and the proportionate share thereof chargeable to each lot, the common council must declare the same by ordinance and direct the auditor to enter a statement in the docket of liens.

" Section 138 provides that regular lots are 50 feet by 100 feet ; regular blocks are 200 feet square. It also particularly provides for irregular blocks and apportionment of the assessment upon unplatted tracts."

The main issues of fact were found against plaintiff in error by the trial court as follows :

" That the city engineer did make a report and estimate of the probable cost of the improvement mentioned in the complaint.

" That the common council did, before making said improvement, estimate the probable cost thereof, and give notice of the said probable cost.

" That in making the assessments upon the property of the plaintiff, set forth in the complaint, the common council did take into consideration whether the property of plaintiffs was benefited by said proposed improvements, and the amount of said benefits.

" That said common council did apportion the cost of making the said improvement according to the benefits to the said property from said improvement.

" That the property set forth in the complaint can be used in connection with the said elevated roadway, and it is accessible from said elevated roadway, and it is so situated that it is and can be benefited by said roadway.

" That the costs assessed against said property do not exceed

or equal the benefits that have accrued to said property by rea-
son of said improvement.

" That plaintiffs, and each of them, did have notice of the
amount of said assessment before the said assessments were made
and before the same were entered in the docket of city liens
and before said work was fully completed by said contractors,
and said plaintiffs and each of them did have an opportunity to
be heard to contest the fairness of said apportionment.   And
plaintiffs, and each of them, did have an opportunity to contest
the question whether their said property was benefited and the
amounts of the benefits, and also as to the amounts of the as-
sessments.

" That said assessments were not made or entered on said city
lien docket without any notice.

" That in making said assessments the common council did
not act arbitrarily or unjustly, and that the common council did
use and exercise discretion and judgment concerning said as-
sessments and the amounts thereof.

" That in accepting said improvement the board of public
works did not act arbitrarily or unjustly, and said board of public
works, in accepting said improvement, did use and exercise their
discretion and judgment concerning the same.

" That upon the giving of the notice of intention to make
said improvement, and prior to the passage of the time and
manner ordinance set out in plaintiffs' complaint, the common
council considered the question of cost of said improvement in
front of each of the lots within the limits of the proposed street
improvement and abutting upon said street, and also the pro-
portionate share of the cost of improving intersections of two
of the streets bounding the blocks in which such lot is situated,
and found that each of said lots abutting on said street, and
each of said lots assessed for intersection of blocks, would be
benefited by said improvement in an amount greater than the
cost of said improvement as assessed against each of said lots."

Afterwards the court made an additional finding of fact in
accordance with a stipulation " that the plaintiffs and each of
them did not have any notice or knowledge of the amount of
the assessments before the assessments were made, or before the

same were entered into the docket of city liens, or before said work was fully completed by said contractors, other than as stated in the complaint and the proceedings therein set forth."

That is, as we understand, except such notice as was given by the proceedings preceding the making of the assessment.

The findings of the court has narrowed our inquiry. That the improvement was a benefit to the abutting property must be accepted as true, and that the benefits were equal to the cost of the improvement. And, further, that the common council of the city apportioned the cost according to the benefits. Our inquiry, therefore, is confined to the validity of the rule of assessments prescribed by section 138, and to whether the plaintiffs in error were afforded an opportunity to contest the assessment.

Nor need we follow the details of counsel's arguments. The contentions of plaintiffs in error are made to depend upon the validity of the rule of assessment prescribed by the city charter, and upon what notice the charter requires to be given to property owners, and what opportunity such property owners are given to be heard upon the benefits to them of the contemplated improvement, the relation of benefits to costs and the apportionment of the assessment, and these several propositions in turn depend upon the opinion of the Supreme Court of the State.

The duty of defining the district to be improved is devolved by the charter of Portland upon the council of the city, to be exercised by passing a resolution of intention so to do, and giving notice thereof, which notice was required to "state the fact of the passage of the resolution aforesaid, its date, and, briefly, the character of the work or improvement proposed, and the time within which written objection or remonstrance may be made thereto."

A resolution of intention was passed in the case at bar, and notice thereof in accordance with the charter was posted in the places and by the officers required, and published as required and proof made thereof.

Passing upon the action of the council and the provisions of the charter, the Supreme Court of the State said:

" Now let us look at the law, and ascertain, if we can, whether it is legally sustainable upon principle. The common council is empowered by the legislature to fix and determine the taxing district. This it did by adopting the resolution of intention to make the improvement. Its action in this regard is legislative in character, and it was not requisite that the legislature should have provided for notice before the council was authorized to act. In prescribing the district it must be presumed, as would have been the case if the legislature had itself acted directly, that it took into consideration the exceptional benefits that would accrue to the property which it was intended should be charged with the burden, because it could inaugurate or make such an assessment upon no other basis. A notice in the present instance was required by the charter, and given, however, and, while it was for the purpose of acquiring jurisdiction, it gave the property holders an opportunity to appear and file objections to the improvement; and it was perfectly competent for them to raise both the objection that as a district the costs would be in excess of the exceptional benefits to the property involved, and that as it respects individual holders and between themselves the assessment would not be proportional to the relative benefits to be derived from the improvement. This is what, in fact, was done by the plaintiffs, as shown by the record, and upon this issue they were accorded a hearing. It is also possible for the common council to determine the matter with reasonable accuracy, as the probable cost and distributive share thereof among the holders was known to them, as was also the locality and situation of the property to be assessed."

The charter, therefore, gives a hearing on the question of benefits to the property owner before the formation of the district to be improved. And the trial court found that the common council before making the improvement estimated the probable cost thereof, and that it " considered the question of cost of said improvement in front of each of the lots within the limits of the proposed street improvement and abutting upon said street, and also the proportionate share of the cost of improving intersections of two of the streets bounding the blocks in which such lots are situated, and found that each of said lots

abutting on said street, and each of said lots assessed for intersection of blocks, would be benefited by said improvements in an amount greater than the cost of said improvement as assessed against each of said lots." And especially as to the property of plaintiffs in error, it was found that the council took into consideration whether that property was benefited by the improvements and the amount of the benefits, and that the cost assessed against the property did not exceed, or equal, the benefits which would accrue. Every requirement of due process of law, therefore, was satisfied as to plaintiffs in error.

What notice the charter of the city gives to property owners of the specific amount of the assessment against their property, and what opportunity to be heard thereon was afforded, the Supreme Court observed as follows :

"There are four several notices required along the way : First, of the proposed improvement; second, inviting proposals for doing the work ; third, touching the acceptance of the work ; fourth, ten days' notice of the entry of the assessment in the docket of city liens. Ample opportunity was thus afforded the owners to appear and interpose the constitutional objections, which is all that is sought to be done in this proceeding."

That is, as we understand, to object not only to the rule of assessment but to the amount of the assessment, for the court further said :

"The improvement consists of an elevated roadway, ranging from ten to fifteen feet in height throughout, except at one intersection, which was a fill, and it is apparent that the cost of the work was practically uniform throughout, and the assessment against the lots was, therefore, as nearly proportional according to benefits as could be devised. At least, it is not apparent that there is any substantial excess of costs above benefits, nor is there such a disproportionate distribution of the burden as to justify the court in declaring the assessment an arbitrary exaction by the legislature. It is beyond the power of human ingenuity to adopt any plan or mode of assessment that will operate to produce exact uniformity, and all that may be expected is a reasonable approximation to such a standard, and the rule adopted under the charter fulfills the condition as ap-

plied to the present controversy.    There is no doubt that the property was benefited in excess of the costs and expenses."

But it is denied that the rule of the Portland charter constitutes an apportionment of the taxes, and it is said, quoting Cooley on Taxation, section 453 :

" If such a regulation constitutes the apportionment of a tax, it must be supported, when properly ordered by or under the authority of the legislature; but it has been denied, on what seemed the most conclusive grounds, that this is permissible. It is not legitimate taxation, because it is lacking in one of its indispensable elements.    It considers each lot by itself, compelling each to bear the burden of the improvement in front of it, without reference to any contribution to be made to the improvements by any other property; and it is consequently without any apportionment.    From accidental circumstances, the major part of the cost of an important public work may be expended in front of a single lot, those circumstances not at all contributing to make an improvement more valuable to the lot thus specially burdened, perhaps even having the opposite consequence.    But whatever might be the result in particular cases, the fatal vice in the system is that it provides for no taxing district whatever."

But if "accidental circumstances" may take from the rule the effect of apportionment, they do not prevent the application of the rule to cases where such circumstances do not exist. Where they exist they can be properly dealt with.    Presumably the rule of the Portland charter was prescribed by the legislature in view of the conditions which existed in that city and in the expectation that the common council would so exercise its power and judgment in the creation of districts that the cost of the improvement ordered would be apportioned by the application of the rule prescribed.    The expectation has been justified by the experience of the city.    Under the rule of the charter, the opening and grading of the streets have been done for years, and the courts have been watchful against abuses— watchful to protect the rights of property owners.    In *Oregon & California R. R. Co.* v. *Portland,* 25 Oregon, 229, the collection of an assessment was enjoined because it was imposed on

property which was not benefited by the improvement ordered. And in its opinion in the case at bar the Supreme Court said :

" But we are inclined to believe that the better doctrine, deducible from adjudged cases, including those of the Supreme Court of the United States, is that the assessment will be upheld wherever it is not patent and obvious from the nature and location of the property involved, the district prescribed, the condition and character of the improvement, the cost and relative value of the property to the assessment, that the plan or method adopted has resulted in imposing a burden in substantial excess of the benefits, or disproportionate within the district as between owners."

From which we infer that the plan or method of assessment must have that result of itself. If that result is produced by a particular application of the plan or method, the latter will not be enforced, as was the case in *Oregon & California Railroad Company* v. *Portland, supra.*

Upon the claim of plaintiffs in error that they did not have "notice or knowledge of the amount of assessments before the assessments were made, or before the same were entered into the docket of city liens, or before said work was completed," we need not deal at length. The taxing district being formed upon a consideration of the utility of the work proposed and the benefits to property owners, and the cost of the work and its apportionment, the amount of the assessment then followed as a certain deduction, and the property owner having notice of all the proceedings and the right to contest them, it would seem useless to give him a further right to contest the assessment. But if notice and an opportunity to contest the assessment be necessary, the Supreme Court has interpreted the statute as giving such notice and opportunity. The court said :

" The manner of notice and the specific period of time in the proceedings when he may be heard are not very material, so that reasonable opportunity is afforded before he has been deprived of his property or the lien thereon is irrevocably fixed. So it has been held that it is sufficient if the party is accorded the right of appeal or to be heard upon an application for abatement (see *Towns* v. *Klamath County*, 33 Oregon, 225; *Weed*

v. *Boston,* 172 Mass. 28), or the assessment is to be enforced by a suit to which he is to be made a party, *Hagar* v. *Reclamation District No. 108,* 111 U. S. 701; *Walston* v. *Nevin,* 128 U. S. 578, or the right of injunction against collection is accorded, by which the validity of the assessment may be judicially determined. *McMillen* v. *Anderson,* 95 U. S. 37. In such case he cannot be heard to complain that his property is being taken without due process of law. The case of *Paulsen* v. *Portland,* 149 U. S. 30, covers the question of the right to notice and a hearing quite fully, and it is significant that special reference is made to the ten days' notice required to be given under section 104 of the charter as it then stood, after the assessment had gone upon the docket of city liens and before collection can be proceeded with, which is almost the exact provision now contained in section 141. While the court at the time declined to decide that such a notice was sufficient, yet, if the cause had been dependent upon it alone, it is not altogether clear that it would have held it insufficient. So it was held by this court, in conformity with the prevailing rule, that if provision is made for notice to and hearing of each proprietor at some stage of the proceeding upon the question of what proportion of the tax shall be assessed upon his land, there is not a taking without due process of law. *Wilson* v. *Salem,* 24 Oregon, 504."

We are of the opinion, therefore, that, under the facts of this case and the interpretation given of the charter of Portland by the Supreme Court of the State, plaintiffs in error have not been deprived of their property without due process of law, and the judgment of the Supreme Court is

*Affirmed.*