Argued March 6, reversed May 10, 1967

STANLEY ET AL, *Respondents, v.* CITY OF SALEM, *Appellant.*
A. C. HAAG & CO. ET AL, *Respondents, v.* CITY OF SALEM, *Appellant.*

427 P. 2d 406

*William J. Juza,* Salem, argued the cause for appellant. With him on the brief was Ted Barbera, Salem.

*Myron L. Enfield,* Salem, argued the cause for respondents. With him on the brief were George A. Rhoten and Rhoten, Rhoten & Speerstra, Salem.

Before PERRY, Chief Justice, and McALLISTER,

62

SLOAN, GOODWIN, DENECKE, FORT and BELLONI,* Justices.

DENECKE, J.

The plaintiffs brought suits to enjoin the City of Salem from enforcing special assessments against their properties. The assessments were for the purpose of paying part of the city's cost of widening Silverton Road. The trial court held that the adjoining property owners received no special benefits from the improvement and, therefore, the assessments were invalid. The court enjoined the city and it appeals.

Silverton Road runs southwesterly into Portland Road, the most traveled north-south street in the north half of Salem. Approximately three-quarters of a mile, that is the westerly end, of Silverton Road was improved. The city council recited in the resolution authorizing the project: "* * * SILVERTON ROAD * * * is in such condition because of narrowness and roughness that it is unsafe and dangerous to persons and vehicles passing on, along and over same, and for that reason, and for the further reason that it is now necessary to improve said portion of Silverton Road in order to facilitate the flow of traffic into, from and through the City of Salem * * *."

Prior to the improvement the road was paved to a width of 20 feet and it had gravel shoulders with no curbs. The improvement consisted of widening the pavement to 44 feet and sidewalks and curbs were installed. (The property owners are not complaining about the assessment for the sidewalks.) Four traffic lanes were designated and 35 miles per hour was made

---

* Belloni, J., did not participate in this decision.

the posted speed. Apparently soon after the finish of the project the average daily traffic on the road was 8,700 cars.

The westerly portion of the improved street runs through a commercial area; for example, plaintiff A. C. Haag & Company sells and services farm and light industrial machinery. The easterly portion of the project runs through a residential area, a portion of which is zoned so that some commercial buildings can be constructed.

The property owners in the commercial area were assessed the full cost of the improvement, except for the cost of the intersections, which reduced the cost by approximately 12 per cent. In the area which was primarily residential, the abutting owners were assessed for all the improvement, except the intersections and 10 feet in width of the paved area, a total reduction of approximately 35 per cent. Because of this difference between the commercial and residential areas two assessments were levied, necessitating these two suits, which have been consolidated.

All the property owners testified that the improvement, except for the sidewalks, did not in any way benefit their property, but, in fact, was a detriment. One witness qualified as an expert and was as well a trustee of affected property. He testified that when a street is improved to speed up traffic it decreases the value of both the commercial and residential property. He testified that there may be some types of business that would be benefited by an improvement such as was made, but he could not think of any.

On the other hand, two expert witnesses called by the city testified that the Silverton Road improvement enhanced the value of all the adjoining property.

██ This court has decided many special-assessment cases. The law has by now become fairly settled. Special assessments can be levied upon property to the extent that property is specially benefited by the improvement for which the levy is assessed. Generally, special benefit is shown by an enhancement of value. The difficulty arises in the application of this law to the facts of the particular case.

█ The relative functions of the city council and the courts and the scope of the court's review of the assessment by the council are stated in *Boyle v. City of Bend,* 234 Or 91, 100-102, 380 P2d 625 (1963). The power to determine that an improvement is to be made and that a tax will be imposed to pay for the improvement is strictly legislative, i.e., for the city council. However, the power to determine that certain property owners have been benefited by such improvement and how much, while initially in the city council, is subject to judicial review.

█ The scope of judicial review in this area is limited. We have stated that the method of assessment fixed by the council is "presumed to be correct." *King v. Portland,* 38 Or 402, 414, 63 P 2, 55 LRA 812 (1900). In *Raz v. City of Portland,* 226 Or 515, 520, 360 P2d 549 (1961), we stated the principle as follows:

> "The city council's determination that the improvements made in the district were for the benefit of the property assessed and in the amount of the assessment is conclusive upon the courts unless it can be said that the city's action is arbitrary, or, as was said in *Northern Pacific Terminal Co. v. City of Portland,* 80 F2d 738, 741-742 (9th Cir 1935), unless the city's finding that the assessed land is benefited is 'palpably arbitrary and a plain abuse.'
> \* \* \* \*"

McQuillin states: "Only 'clear proof of great force' will warrant a conclusion that an assessment is erroneous." 14 McQuillin, Municipal Corporations (3d ed 1950), 438, § 38.186, and in 14 Cum Supp 1966, p 78, new textual material is added as follows: "Where reasonable men differ, the determination of the assessing officer will be upheld."

■ From the above statements it is clear that the property owner has a heavy burden in attempting to persuade the judiciary to overturn the action of the city council.

■ That the improvement also benefits the public generally, as well as the adjoining property, and that one of the stated purposes for initiating the improvement is to speed the flow of traffic, a general benefit, does not of itself overcome the presumption that the council was correct in determining that the adjoining property was specially benefited.

In 2 Antieau, Municipal Corporation Law, 291-292, § 14.01 (1965), the rule is expressed:

> "* * * When a local improvement produces a special benefit, other than the benefit received by the general public, to certain land in the vicinity of the improvement, the mere fact that it also results in benefit to the general public, or even the fact that its immediate occasion or purpose was the creation of the general improvement project of which it is a part, does not deprive it of its character as a local improvement nor prevent the imposition of at least a portion of its cost as a special assessment against such land. * * *"

*Fisher v. City of Astoria,* 126 Or 268, 277, 269 P 853, 60 ALR 260 (1928), appears to subscribe to this principle.

■ Specific evidence of the value of the affected property before and after the improvement is frequently used to support the contention that there was or was not special benefit conferred. *Appeal of Schmitz,* 44 Wash2d 429, 268 P2d 436 (1954); *Anderson v. City of North Miami,* 99 S2d 861 (Fla 1958). This is not essential, but may be more convincing than general statements that the improvement has, or has not, enhanced the value of the properties. In this case none of the parties put on such evidence; however, as the burden is on the plaintiffs, such deficit does not damage the city's position.

■ Most of the testimony in these cases that the value of the adjoining properties had not been enhanced by the improvement was based upon the present use of the properties. In determining whether an enhancement of value has occurred the inquiry cannot be restricted to the present use. The test must be, would the value be enhanced if the property were put to its highest and best use? *Posselius v. City of Detroit,* 44 F2d 395, 398-399 (E D Mich 1930); *Village of Edina v. Joseph,* 264 Minn 84, 119 NW2d 809 (1962).①

■ Plaintiffs urge that the decision of *Fluckey v. City of Plymouth,* 358 Mich 447, 100 NW2d 486 (1960), is persuasive authority that adjoining property owners are not specially benefited by an improvement transforming a 22-foot paved street into a four-lane thoroughfare. That decision is one illustrating that in some instances there can be convincing proof that a specific street widening did not benefit the abutting owners. Before and after that decision, however, the Michigan court held that in other cases abutting owners had not introduced evidence of sufficient weight to prove that

① This is not applicable to those properties which are zoned solely for residential purposes.

a street widening had not specifically benefited the abutting owners. *Marks v. City of Detroit,* 246 Mich 517, 523, 224 NW 619, 620-621 (1929), in which the court said: "But to what extent adjoining property is enhanced in value by the widening of a street is a question on which men may widely and honestly differ." *Eilender v. City of Pontiac,* 371 Mich 671, 124 NW2d 806 (1963).

*Boyle v. City of Bend,* supra (234 Or 91), is not helpful to plaintiffs' contention. In that case the city widened a street to facilitate the movement of traffic. The adjoining property owners were assessed the cost and sought judicial review. The statute under which they acted, ORS 223.397, since repealed, Oregon Laws 1963, ch 507, § 1, p 899, provided that a jury could decide whether the improvement conferred special benefits upon the property assessed. The jury held it did not. Here, we have no statute and are guided by the established common-law rules governing judicial review of special assessments.

We hold that the plaintiffs have not overcome the weighty presumption that the action of the city council in fixing the assessment district and apportioning the costs within such district is correct.

Reversed.