Argued September 4, 1975, affirmed January 22, 1976

# WESTERN AMUSEMENT COMPANY, INC., *Petitioner,*

*v.*

# CITY OF SPRINGFIELD, *Respondent.*

545 P2d 592

*Laurence E. Thorp,* Springfield, argued the cause for petitioner. With him on the briefs were Sanders, Lively & Wiswall, Springfield.

*Edward C. Harms, Jr.,* Springfield, argued the cause and filed briefs for respondent.

DENECKE, J.

## DENECKE, J.

This is a proceeding to review a special assessment levied by the city to pay for the construction of a street.

The petitioner, Western Amusement Company, filed a writ of review in the circuit court to reverse the city council's levy of assessment. The circuit court generally found the petitioner's property was not benefited by the street and "annulled" the assessment. The city appealed to the Court of Appeals which reversed. 21 Or App 7, 533 P2d 825 (1975). We accepted review.

The majority of the Court of Appeals held the circuit court erred because the city council did not act "arbitrarily." The writ of review statute, ORS 34.040, in effect when the petition for a writ of review was filed, provided that the writ should be granted if the tribunal acted "arbitrarily."

In 1965 the legislature amended the statute to provide the writ of review should be granted if the tribunal acted "arbitrarily." Oregon Laws 1965, ch 292, p 632. This amendment was made as the result of a recommendation by the Local Government Committee of the State Bar. The committee was of the opinion that this court had interpreted ORS 34.040 to provide that a finding of an administrative tribunal must be reversed by the court if not supported by substantial evidence. The proposed amendment inserted "arbitrary" to codify that rule. The committee commented:

> "* * * However, where the finding or decision is arbitrary, that is, where there is no substantial evidence to support it, the Oregon Supreme Court has held it subject to vacation on writ of review* [*e.g., 25 Or 301; 198 Or 53; 211 Or 296; 226 Or 92.]. While this cause for review repeatedly appears in case law, it is not so apparent in the statute, where errors of law, as such, do not constitute cause for review." Oregon State Bar Committee Reports, 141 (1964).

In 1973 the legislature further clarified the scope of review by deleting "arbitrary" and inserting as a sub-

[ 39 ]

stitute that the writ should be granted if the tribunal "Made a finding or order not supported by reliable, probative and substantial evidence.' Oregon Laws 1973, ch 561, p 1262. From the legislative history it appears the amendment had two purposes: (1) To reiterate but state more clearly that the writ of review should be granted if a tribunal made an order or finding not supported by the evidence and (2) To make the language defining the scope of review on writ of review identical to the language used to state the scope of review in the Administrative Procedures Act. ORS 183.480(7)(d).

Because of this history we believe the scope of review has not been changed because of the 1973 amendment. If there was any doubt about the scope of review it has now been settled. As Chief Judge Schwab stated in his concurring opinion, the 1973 amendment is procedural, was in effect at the date of the circuit court hearing and should be applied. *Smith v. Clackamas County,* 252 Or 230, 234, 448 P2d 512 (1969).

As stated, the Administrative Procedures Act and the 1973 amendment have the phrase, "reliable, probative and substantial" evidence. In the numerous appeals coming before it under the Administrative Procedures Act, the Court of Appeals has never discussed whether anything has been added by the addition of "reliable and probative." The Court of Appeals has consistently stated the administrative order must be supported by substantial evidence. For example, *Joiner v. Public Emp. Relations Bd.,* 14 Or App 567, 571, 513 P2d 523 (1973). Davis states the "dominant tendency" in both state and federal courts is to apply the substantial evidence test. 4 Davis, Administrative Law, 114, § 29.01 (1958). Until and unless a future case reveals the need for a different interpretation, we will interpret "reliable, probative and substantial" to mean "substantial" evidence.

What substantial evidence is, however, when reviewing a city council's determination of what pro-

perty should be specially assessed to pay for an improvement is a complex question.

We have reviewed special assessments in all sorts of proceedings, — writs of review, suits for injunction, declaratory judgments, and suits to quiet title. Regardless of the nature of the review proceeding, we have consistently used the same approach:

"* * * We held that the city council's determination that property has been benefited by an improvement and the amount of the benefit is conclusive unless the court can say that the city council's action was palpably arbitrary and abusive. We said that the burden of persuading the court is a heavy one. * * *." *Gilbert v. City of Eugene,* 255 Or 289, 292, 465 P2d 880 (1970), summarizing *Stanley v. City of Salem,* 247 Or 60, 427 P2d 406 (1967).

In *Boyle v. City of Bend,* 234 Or 91, 101-102, 380 P2d 625 (1963), we stated: "It would be less confusing to say that the question of benefit is always a judicial question but that the scope of review is limited." In the footnote to that statement we stated:

"The limited scope of review has been recognized in several of our cases. For example, Austin v. Tillamook City, 121 Or 385, 254 P 819 (1927) states that in the absence of fraud or mistake, the determination of the common council as to the amount of the benefit derived from such an improvement is conclusive (collecting cases). And see the quotations from Oregon cases in Killingsworth v. Portland, 93 Or 525, 529, 184 P 248 (1918)." 234 Or at 101-102.

Seventy-five years ago this court considered an attack on a special assessment in which the property owner contended the assessment violated the Fifth Amendment of the Federal Constitution because the assessment resulted in the taking of property without just compensation as the improvement provided no benefit to the property owner. Mr. Justice Wolverton wrote for the court:

"* * * [T]he assessment will be upheld wherever it is not patent and obvious from the nature and location of the property involved, the district prescribed, and condition and character of the improvement, the cost and rela-

tive value of the property to the assessment, that the plan or method adopted has resulted in imposing a burden in substantial excess of the benefits, or disproportionate within the district as between owners. * * *." *King v. Portland,* 38 Or 402, 429, 63 P 2, 55 LRA 812, affmd 184 US 61, 22 S Ct 290, 46 L Ed 431 (1900).

The clear and consistent policy of our decisions has been to be very reluctant to interfere with the decisions of the local governments that certain property has been benefited and, therefore, should be assessed.

■ There are probably several reasons why the courts, including this court, have adopted this policy of restraint. While making special assessments is correctly classified as a quasi-judicial function, analytically, it also has aspects of an exercise of the legislative function. *Boyle v. City of Bend,* supra (234 Or at 101). The local government imposes a tax when it specially assesses. The imposition of a tax is the exercise of a legislative function. The decision to tax is not subject to judicial review. *Boyle v. City of Bend,* supra (234 Or at 101).

We have stated that the distinction between judicial and nonjudicial functions should be made on practical considerations; that is, it should be classified as a judicial function if it is a function for "which the judicial machinery is adaptable." *Boyle v. City of Bend,* supra (234 Or at 102). We have stated courts are adaptable to deciding whether property has been benefited by a special improvement.

However, the problem of what property is specially benefited by an improvement is, on its fringes, difficult to solve. Courts have no more expertise in making this determination than city councils or county commissioners, aided by staffs with at least some expertise.

In *Roseta v. County of Washington,* 254 Or 161, 166-168, 458 P2d 405, 40 ALR3d 364 (1969), we observed that the judiciary entered into the zone change process because of the record of zone changes being granted

because of special privilege or without regard to the effect of the zone change on the overall plan for land use. We are not aware of any record of substantial legislative deficiency in the area of special assessments.

Special assessments are a frequently used means to finance local improvements. This frequency, added to the perplexing problem of deciding when certain property is benefited and how much, would cause a substantial amount of litigation if the judiciary made an unrestrained entry into the arena.

These several considerations which probably caused this court and others to restrict their review of council determinations of special assessments continue to exist.

■ Regardless of our judicial reluctance to intervene, the state legislature has provided that the determination cannot be sustained unless supported by "substantial evidence." What is "substantial evidence," however, is a judicial issue. Davis states: "Whatever impression a literal-minded reader may get from the words in the statute book, the plain reality is that the substantial-evidence rule as the courts apply it is a variable." 4 Davis, Administrative Law, 126, § 29.02 (1958).

■ We consider our authority to be that in determining whether the city council's action is supported by substantial evidence we can consider the long and well-founded policy of judicial restraint in this area.

Against this backdrop we examine the evidence in this case.

The record on writ of review is the record of what transpired before the administrative body. The record is frequently of poor quality, as it is here, because of inadequate recording devices; however, the parties have not contended that any significant evidence is omitted.

Petitioner's property is in the City of Springfield. It is 1,000 feet wide, 1,300 feet deep, and is used as a drive-in theater. It fronts on the north on a main thoroughfare, Main Street, which provides the only access from a through street. The paving of South 49th Place (49th) is the improvement for which petitioner is assessed. It abuts petitioner's property on the east for 859 feet. East of 49th is a large parcel being developed for residential use. The developers instigated the improvement.

Forty-ninth has no direct access to Main Street, or any other through street. The north end of 49th is 557 feet south of Main Street. The closest access from Main Street to 49th is a route on which one has to travel about 650 feet south of 51st Place, then west about 1,000 feet to 49th.

The estimated cost of the project is $45,000. The proposed assessment on petitioner is $18.50 per front foot and is $22.40 per front foot on the property owners on the other side of the street. Under the proposed assessment petitioner will pay for about 35 per cent of the project.

There is no direct evidence that the improvement of 49th will presently benefit petitioner's property; that is, evidence such as the testimony of the experts in *Stanley v. City of Salem,* supra (247 Or at 63). They testified the improvement enhanced the present value of the property. A representative of petitioner testified the improvement would be of no present benefit to petitioner. The witness further testified, however: "Western Amusement Company will probably have a * * * need (we don't know when it will be—it may be ten years from now), then we would have no objection to being placed in the position to reimburse the Smith brothers [the developers] on a prorata share for the cost of the street at the time that it began to benefit."

This court and others have held that in determining whether the improvement benefits the property, its present use is not controlling. Testimony that the pro-

[ 44 ]

perty will be benefited in the future by the improvement is sufficient evidence of benefit. There is at least one compelling reason for this principle. The assessment must be made when the improvement is constructed.[1] If benefit had to be determined by the present use, an owner could change the use after the assessment was made and receive full benefit of the improvement without any payment.

In *Stanley v. City of Salem,* supra (247 Or at 66), we stated:

"Most of the testimony in these cases that the value of the adjoining properties had not been enhanced by the improvement was based upon the present use of the properties. In determining whether an enhancement of value has occurred the inquiry cannot be restricted to the present use. The test must be, would the value be enhanced if the property were put to its highest and best use? * * *."[2]

In *Beh v. City of Des Moines,* 257 Iowa 211, 221, 131 NW2d 488, cert den 381 US 935, 85 S Ct 1766, 14 L Ed2d 699 (1965), the court stated: "Benefits are not necessarily limited by the present use of the property, as future uses and reasonably anticipated prospects may be considered."[3]

In the days when cases such as this reached the United States Supreme Court, Mr. Justice Holmes stated this principle in a philosophic manner. *L. & N. R. R. Co. v. Barber Asphalt Co.,* 197 US 430, 435, 25 S Ct 466, 49 L Ed 819 (1905):

"* * * [W]e are of opinion that the legislature is warranted in going one step further and saying that on the question of benefit or no benefit the land shall be considered simply in its general relations and apart from its

---

[1] For example ORS 223.387-223.401.

[2] *Wing v. City of Eugene,* 249 Or 367, 374, 437 P2d 836 (1968), is not to the contrary.

[3] The court later held in another case that when the only evidence was that the highest and best possible use of the property for the next 25 years was for apartment houses, future uses beyond that period could not be considered. *Spring Valley Apts. v. City of Cedar Falls,* 225 NW2d 129, 131-132 (Iowa 1975).

particular use. See *Illinois Central R. R. v. Decatur,* 147 U.S. 190 [13 S Ct 293, 37 L Ed 132 (1892)]. On the question of benefits the present use is simply a prognostic, and the plea a prophecy. If an occupant could not escape by professing his desire for solitude and silence, the legislature may make a similar desire fortified by structures equally ineffective. It may say that it is enough that the land could be turned to purposes for which the paving would increase its value. Indeed, it is apparent that the prophecy in the answer cannot be regarded as absolute, even while the present use of the land continues—for no one can say that changes might not make a station desirable at this point; in which case the advantages of a paved street could not be denied. * * *."

The case involved the assessment of the railroad's main roadbed for the construction of an adjoining "carriage way."

That the street abuts the petitioner's property increases the possibility that the street will benefit the property in the future. Mr. Justice Holmes also made this observation:

"* * * That, apart from the specific use to which this land is devoted, land in a good-sized city generally will get a benefit from having the streets about it paved, and that this benefit generally will be more than the cost, are propositions which, as we already have implied, a legislature is warranted in adopting. * * *." 197 US at 435.

McQuillin goes so far as to state: "For example, there is a presumption of benefit to all property abutting on a street to be improved." 14 McQuillin, Municipal Corporations, 133, § 38.36 (1970 rev).

■ We consider the petitioner's testimony of future benefit, coupled with the location of the street abutting petitioner's property, to be substantial evidence supporting the city's assessment.

■ The petitioner contended in its petition for review that the Court of Appeals erred in reversing the trial court's finding of fact that there was no benefit because there is evidence to support the trial court's finding. This is not an appeal from an initial hearing

[ 46 ]

before a trial court. The trial court heard an appeal from an administrative body acting in a judicial capacity and the issue before any court on appeal is, was there evidence supporting the administrative body's finding.

The decision of the Court of Appeals is affirmed.