Argued March 22, affirmed May 3, reconsideration denied June 9, petition for review denied June 29, 1976

CHRYSLER CORPORATION et al, *Appellants,*

*v.*

CITY OF BEAVERTON et al, *Respondents.*

(No. 34-790, CA 5059)

WILLAMETTE INDUSTRIES, INC., *Appellant,*

*v.*

CITY OF BEAVERTON et al, *Respondents.*

(No. 34-791, CA 5059)

549 P2d 678

Argued and submitted March 22, 1976.

*John Wiley Gould and R. Alan Wight,* Portland, argued the cause for appellants. With them on the joint briefs were Dezendorf, Spears, Lubersky & Campbell and Miller, Anderson, Nash, Yerke & Wiener, Portland.

*Michael G. Dowsett,* City Attorney, Beaverton, argued the cause and filed the brief for respondents.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

## LANGTRY, J.

On July 22, 1974 the Beaverton City Council (defendants) enacted Ordinance No. 1965 establishing a local improvement district[1] for the purpose of constructing therein certain concrete sidewalks and asphalt bikeways. That ordinance set out with specificity the nature and location of the "improvements" to be made, directed the city manager to provide for their construction in accordance with applicable ordinances, statutes, and specifications, "declared and determined" that the authorized improvements would "specifically benefit" all abutting property, and provided that their cost would be "apportioned and assessed" against that property determined to be benefited.[2] Plaintiffs, owners of real property against which a portion of the costs of the improvements would be assessed pursuant to the terms of the ordinance, thereafter initiated these writs of review proceedings in an attempt to have the council's action "annulled," contending that the finding of special benefit to their property was unsupported by "reliable, probative and substantial evidence."[3]

---

[1] "S. W. Allen Boulevard and Western Avenue Sidewalk and Bikeway Improvement District."

[2] On March 25, 1974 defendants had adopted Resolution 1801 declaring their intention to create a sidewalk and bikeway improvement district. It was incorporated by reference into Ordinance 1965. Section 4 of that resolution provided for the apportionment of the costs and expenses of the improvements among benefited property "on the basis of the front or lineal footage of sidewalk in each tract contained as compared to the total front or lineal footage within the entire district."

[3] A writ of review

"* * * shall be allowed * * * where [an] inferior court, officer or tribunal * * * in the exercise of judicial or quasi-judicial functions appears to have:

"* * * * *

"(3) Made a finding or order not supported by reliable, probative and substantial evidence * * *." ORS 34.040(3).

While the decision to establish an improvement district and to impose a tax to meet the costs of the proposed improvements is, in the first instance, the exercise of a legislative function, "the power to determine that certain property owners have been benefited by [an] improvement and how much

The circuit court concluded that the council's findings of "special benefit" to plaintiffs' property were supported by reliable, probative and substantial evidence and dismissed plaintiffs' writs on July 31, 1975. These appeals were taken from that action. We affirm.

Over the years the courts of this state have been called upon to review the imposition of special assessments by local governments in a variety of legal contexts, including writ of review proceedings, suits for injunctive relief or declaratory judgments, and suits to quiet title. Regardless of the specific form of any single action, courts faced with a challenge of a special assessment have consistently adhered to the "precise and clear" rule that:

> "* * * [T]he city council's determination that property has been benefited by an improvement and the amount of the benefit is conclusive unless the court can say that the city council's action was palpably arbitrary and abusive. * * * [T]he burden of persuading the court is a heavy one * * *." *Gilbert v. City of Eugene,* 255 Or 289, 292, 465 P2d 880 (1970).

To the same effect *see Wing v. City of Eugene,* 249 Or 367, 437 P2d 836 (1968); *Stanley v. City of Salem,* 247 Or 60, 427 P2d 406 (1967); *Boyle v. City of Bend,* 234 Or 91, 380 P2d 625 (1963); *Western Amusement v. Springfield,* 21 Or App 7, 533 P2d 825 (1975), *aff'd* 274 Or 37, 545 P2d 592 (1976).

---

* * * is subject to judical review." *Stanley v. City of Salem,* 247 Or 60, 64, 427 P2d 406 (1967); *see also Boyle v. City of Bend,* 234 Or 91, 380 P2d 625 (1963). At bar, no assessment had been levied at the time the petitions for writs of review were filed. The city argued that applicable assessment procedures require the adoption of an additional resolution, further hearings, and the enactment of yet another ordinance as prerequisites to the "spreading" of the assessments authorized by Ordinance 1965, and for this reason filed a motion to quash in the circuit court. Although no cross-appeal has been taken from the order denying that motion, defendants have at several points in their brief to this court argued that up to this time no "judicial or quasi-judicial" action has been taken. We disagree. Although further proceedings will be necessary as a prerequisite to the levying of specific assessments, the determination by defendants that plaintiffs' land will be specially benefited represents a "judicial or quasi-judicial" decision subject to review at this time. *See Lindley v. City of Klamath Falls,* 8 Or App 375, 494 P2d 464 (1972).

[ 364 ]

■■ Thus, while it is axiomatic both that special assessments can be levied only upon property which is "specially benefited" by the improvement for which the levy is passed and that in order to specially benefit property the improvement must bring to it a benefit substantially more intense than that which is realized by land not assessed,[4] the scope of judicial review on those questions has traditionally been relatively narrow. Plaintiffs contend, however, that a 1973 amendment to the writ of review statute served to substantially enlarge the scope of review and consequently alter the role of the judiciary in assessment cases. Plaintiffs argue that as a result of the legislature's latest amendment of ORS 34.040[5] the burden of proof has now been placed upon the city council, and that no "presumption of correctness" is any longer to be accorded a finding of special benefit. They contend the decision to assess property may only be upheld where the local government has introduced a "high quantum" of evidence in support of its conclusion that the property is specially benefited. We find this position to be untenable in light of a recent opinion in which the Supreme Court explicitly held that the statutory modification relied upon by plaintiffs was essentially procedural in nature and did not in any significant way change the scope of review to be exercised where a finding of special benefit is challenged. *See Western Amusement v. Springfield,* 274 Or 37, 545 P2d 592 (1976).

In *Western Amusement* the court reviewed the

---

[4] *Stanley v. City of Salem,* 247 Or 60, 427 P2d 406 (1967); *Fisher v. City of Astoria,* 126 Or 268, 269 P 853, 60 ALR 260 (1928); *Sisters of St. Mary v. City of Beaverton,* 4 Or App 297, 478 P2d 412 (1970).

[5] Prior to 1965, ORS 34.040 provided that a writ of review would be allowed where the inferior court, officer, or tribunal exercised a judicial function erroneously or exceeded its or his jurisdiction. In 1965 the legislature amended the statute to provide that the writ might *also* be issued where a judicial function had been exercised "arbitrarily." Oregon Laws 1965, ch 292, p 632. In 1973 the legislature deleted the word "arbitrary" and substituted subsection (3) which provides that a writ will be granted where an order or finding made is "not supported by reliable, probative and substantial evidence." Oregon Laws 1973, ch 561, p 1262.

evolution of ORS 34.040, determined that no enlargement of the scope of review had been intended by its most recent amendment, and concluded:

> "The clear and consistent policy of our decisions has been to be very reluctant to interfere with the decisions of the local governments that certain property has been benefited and, therefore, should be assessed.

> "* * * * *

> "We consider our authority to be that in determining whether the city council's action is supported by substantial evidence we can consider the long and well-founded policy of judicial restraint in this area." 274 Or at 42-43.

Review of the record made before the city council in this case indicates to our satisfaction that it includes such " '* * * relevant evidence as a reasonable mind might accept as adequate * * *' "[6] to support the conclusion that plaintiffs' land would be "specially benefited" by the proposed improvements.

The city engineer for the City of Beaverton unequivocally testified that the primary purpose of the improvements contemplated was "[t]o facilitate pedestrian and bicycle traffic" "[i]nside the limits of the [improvement district]." May 13, 1974 hearing, p 10. The city manager offered testimony in support of his conclusion that the proposed sidewalks and bikeways would benefit in a special way the employes, and through them the employers, part of which the plaintiffs are, within the district. April 15, 1974 hearing, p 12. A representative of one of the plaintiffs conceded that the fact the proposed improvements would permit and encourage employes to take advantage of alternatives to the use of their automobiles as a means of commuting "might be a benefit," although he contended that no demand yet existed for such alternatives. May 13, 1974 hearing, p 35. Finally, as the circuit court pointed out:

> "A description of the proposed district shows a retail commercial area at one terminus, a major state highway

---

[6] *Bay v. State Board of Education,* 233 Or 601, 605, 378 P2d 558, 96 ALR2d 529 (1963).

(Hwy. 217) at another and a mixed residential and commercial area at a third. With the exception of a motel-restaurant complex near the state highway terminus the district property owners do not invite the public to their businesses. One can thus conclude from the record that the major if not only movement of people from outside the district will be toward the northern retail area or the western motel-restaurant complex and coming from the southeast terminus. The outside district distance to either area is substantial for a person walking. Certainly a walker would have difficulty returning with purchases of substantial number, bulk or weight even assuming good weather. Bicyclists would find the distance less forbiding [sic] but would suffer the same other impediments mentioned.

"The record shows over 600 people work within the district and obviously most are located closer to the motel-restaurant complex and the retail commercial area than the residents living southeast of and outside the district. Certainly district employees would enjoy greater benefit from sidewalks or bikeways than would people living without the district. The greater the distance from the district the less benefit would be derived."

■ While specific evidence of the value of the affected property before and after the improvement may constitute more convincing evidence of a special benefit than more general statements that such benefit exists, such evidence is not essential in every case. Nor is the fact that a specific improvement benefits the public generally, as well as the adjoining property, sufficient in and of itself to meet the heavy burden imposed upon those challenging the decision of the local government.[7] In *State Highway Com. v. Bailey,* 212 Or 261, 319 P2d 906 (1957), the Oregon Supreme Court adopted the view that:

" 'Benefits are special which add anything to the convenience, accessibility and use of the property as distinguished from benefits arising incidentally out of the improvement and enjoyed by the public generally * * *.' " 212 Or at 306, quoting from *Hempstead v. Salt Lake City,* 32 Utah 261, 90 P 397 (1907).

[7] *Stanley v. City of Salem,* 247 Or 60, 65-66, 427 P2d 406 (1967).

The record in this case supports the council's determination that the proposed improvements will contribute to the "convenience, accessibility, and use" of plaintiffs' properties.

Affirmed.[8]

---

[8]Plaintiffs have also alleged a denial of "due process" in this case, contending that the procedural requirements set forth in *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973), were not strictly adhered to. Although accorded ample opportunity to be heard, to present and rebut evidence, on three different occasions prior to the adoption of Ordinance No. 1965, plaintiffs argue that, because the council before whom they appeared did not constitute the "impartial tribunal" required by *Fasano,* their due process rights were not, in fact, sufficiently protected. While the council had, prior to the hearings afforded plaintiff, made an investigation into the relative merits of the creation of the improvement district and the benefits, both general and special, which might flow from the construction of the contemplated improvements, those "contacts" did not, we believe, serve to deprive the council of the "impartiality" required. We find that no violation of due process occurred in this case. *See Western Amusement v. Springfield,* 274 Or 37, 42-43, 545 P2d 592 (1976); *Tierney v. Duris, Pay Less Properties,* 2014-16, 21 Or App 613, 536 P2d 435, Sup Ct *review denied* (1975).