Argued August 30, order affirmed as modified September 10, petition for rehearing pending

# OREGONIANS FOR NUCLEAR SAFEGUARDS,
*Petitioners,*

*v.*

# MYERS et al, *Respondents.*

554 P2d 172

See also, Or., 554 P2d 177 and 554 P2d 179.

*Christopher P. Thomas,* Portland, argued the cause and filed a brief for petitioners.

*Catherine Allan,* Assistant Attorney General, Salem, argued the cause for respondent Clay Myers. With her on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

DENECKE, C. J.

**DENECKE, C. J.**

This is one of several original proceedings to review orders of the Secretary of State deleting portions of arguments submitted for insertion in the voters' pamphlet. The arguments involved in this proceeding oppose an initiative measure entitled, "Regulates Nuclear Power Plant Construction Approval." Petitioners object to the Secretary of State's failure to delete certain statements and to take other action.

ORS 255.415 provides that by paying a filing fee of $300 or filing a petition signed by 1,000 voters, any person can have an argument inserted in the voters' pamphlet advocating or opposing any measure to be voted upon. ORS 255.425 provides that the Secretary of State shall hold a hearing and decide whether any statement of fact in an argument is "false or grossly misleading." If the statement is found false or grossly misleading, the Secretary of State is authorized to delete the statement. The statute further provides that a party to the hearing may petition this court to review the Secretary of State's order.

The parties to these various proceedings are uncertain what the legislature contemplated the function of the Secretary of State or of this court to be and so is the court. As stated, the statute provides that the Secretary of State shall hold a hearing to decide whether any of the statements in the argument are "false or grossly misleading." An example to illustrate the problem is the following statement made in the argument against the measure: "And nuclear power is at least 20% less expensive then either coal or oil."

Is it "false or grossly misleading" to state that nuclear power is at least 20% less expensive then either coal or oil? From our general knowledge and the evidence introduced at the hearing, this is a very complex question. However, the legislature has granted very little time to hear, decide or review this issue. For most elections arguments only must be filed

110 days before the election. ORS 255.415. The hearing must be held within five days after the argument is filed. The Secretary of State must decide within five days after the hearing. ORS 255.425. The party must petition for a review by this court within 10 days after the Secretary of State's decision. The statute provides: "The review of the Supreme Court shall be determined expeditiously as may be appropriate for orderly and timely circulation of the voters' pamphlet." ORS 255.425.

How, as well as what, the Secretary of State is to do is also not clear. ORS 255.425 provides that the Secretary of State "shall hold a hearing under ORS chapter 183," the Administrative Procedures Act (APA). The APA provides for two types of hearings: one for rule making, ORS 183.335; and one for contested cases, ORS 183.415. The procedure for rule making contemplates an "informational" or "auditive" hearing similar to a hearing before a legislative committee considering proposed legislation. *N. W. Envir. Def. v. Air Poll. Auth.,* 16 Or App 638, 640, 519 P2d 1271 (1974). At this type of hearing the witnesses usually are not sworn, the testimony may be in oral or written form, and there is no right of cross-examination. See Rule 10.3, Attorney General's Rules of Procedure Under Administrative Procedures Act, effective October 22, 1975.

In contested cases the procedure is more formal. Some sort of pleading is required. Witnesses are sworn, generally there is a right to cross-examination, and there are rules of evidence. ORS 183.450. This kind of hearing is termed an "adjudicative" or "quasi-judicial" type of hearing.

Inasmuch as the Secretary of State is required to decide whether a purported "statement of fact" in an argument is "false or grossly misleading," the statute seems to contemplate an "adjudicative" type of hearing. However, because of the time limits fixed by the

legislature, we are of the opinion that it is very doubtful in many instances whether this type of hearing could be conducted by the Secretary of State.

The Secretary of State conducted a hearing resembling an "informational" hearing and the parties, some represented by attorneys, made no objection. Twenty-one arguments concerning six measures were considered in hearings lasting two afternoons. Witnesses were not sworn, parties did not cross-examine witnesses, and much of the evidence probably would not have been admissible in a contested case.

We have detailed these procedural problems for the Secretary of State and the parties as background for the court's problem of what should be the scope of its judicial review of the Secretary of State's action.

■ Some of the parties suggest we should review de novo; that is, make an independent determination of the issues, uninfluenced by the action of the Secretary of State. Even when the record for review is compiled from a full-fledged judicial hearing before a trial court, an appellate court is not adapted to make factual determinations. When the record is compiled from an "informational" hearing, such as was conducted in this proceeding, it would be a sham for a court at any level to make "findings of fact." We are satisfied our role is not to review de novo the order of the Secretary of State.

Other parties have suggested that our role is to determine if there is any substantial evidence to support the Secretary of State's findings. That is the scope of judicial review of findings in contested cases under the APA. ORS 183.482(7). The difficulty with the application of that scope of review is that because the hearing was conducted by the Secretary of State and the parties as an "informational" hearing, much of the evidence would not rise to the quality of "substantial."

There is no definitive statement of what is "sub-

stantial" evidence. Its definition is variable. *Western Amusement v. Springfield,* 274 Or 37, 545 P2d 592 (1976). Mr. Chief Justice Hughes' definition in *Edison Co. v. Labor Board,* 305 US 197, 229, 59 S Ct 206, 83 L Ed 126 (1938), was: "* * * It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. * * *."

Two examples of a large amount of the "evidence" will indicate its quality. There is a copy of a story in the East Oregonian which states, in part, "Coal should be less in building costs, said Leonard Booth, PGE's manager of coal plant projects, with higher fuel costs. Nuclear is more expensive to build but has lower fuel costs." A party introduced an excerpt from some publication whose name we cannot determine which stated the results of a survey published in Electrical World. It stated that total energy costs for electricity generated by nuclear power is 34 per cent more expensive than electricity produced in coal plants. This is not the quality of material which gives verity to findings made by a court, but for the most part it was all the Secretary of State had to work with and probably what the parties could produce within the procedural limits within which they were acting.

We are of the opinion that the scope of review standard, — was there substantial evidence to support the administrator's findings, — is not applicable.

We, therefore, must determine a different standard for review. We conclude that the action of the Secretary of State in deleting parts of the argument should be affirmed if there is any evidence that such parts are false or grossly misleading. The Secretary of State's failure to delete parts of the argument should be affirmed if there is no evidence from which it can be inferred that the statement is false or grossly misleading or if there is evidence to substantiate the statement. The burden of proof is on the petitioners seeking to overturn the order of the Secretary of State. The evidence need not be "substantial" and is sufficient

unless, based upon the knowledge and experience of this court, it is patently false.

The petitioners contend that the Secretary of State erred in failing to delete 23 statements made in the arguments filed opposing passage of the measure. Not all will be discussed.

■  Petitioners are most concerned that the Secretary of State did not delete statements in the various arguments which state, for example, "It Would Ban Future Nuclear Power." Petitioners strenuously object to the word "Ban." Petitioners' contention is that the measure clearly does not ban power from the existing nuclear plant and it does not ban future nuclear plants, if they can meet certain conditions which the measure would establish.

The measure does not directly prohibit the construction of nuclear power plants. The opponents of the measure contend that the conditions the measure establishes for the construction of nuclear plants cannot be met and, therefore, the measure effectively does ban the construction of new nuclear power plants. These conditions concern financial responsibility for damages, operating safety and waste disposal. The record contains statements that some of these conditions cannot presently be met and other statements that can be construed to mean that probably they cannot be met in the future. This is sufficient to support the Secretary of State's refusal to delete these statements.

■  The opponents of the measure stated in one of their arguments:
"IT DISREGARDS THE PERFECT SAFETY RECORD OF NUCLEAR POWER. There are 60 licensed nuclear power reactors in the nation. In almost 20 years of operation, there has never been a single instance of reactor-related harm to any member of the public. This record is without parallel in any other human endeavor."

The Secretary of State concedes that the use of the

word "PERFECT" is inaccurate. The statement, "there has never been a single instance of reactor-related harm to any member of the public" is a part of this inaccuracy, is not supported by the record, and is contradicted by the record. The Secretary of State is ordered to delete the entire above quoted argument.

We have examined the remainder of petitioners' objections and the record. Following the standard of review we have stated, we find the Secretary of State did not err in not deleting the remainder of the statements objected to.

■ Petitioners also object because in some instances the Secretary of State permitted the party submitting the argument to change a word or sentence. Petitioners contend the Secretary of State's only power is to "delete." The legislature assumed having the arguments in the voters' pamphlet would be instructive to the voters. The changes made by the party submitting the argument were to accomplish that purpose by making the statement more accurate or based upon more current information. That purpose should be furthered. We hold the Secretary of State had this authority to accept changes.

■ Petitioners also object that the Secretary of State accepted three arguments from one group and the statute should be construed to permit one group or person to submit only one argument.

ORS 255.415(1) provides, "* * * any person may file with the Secretary of State a typewritten argument advocating or opposing the measure. The argument * * * shall be printed on 29.8 square inches of the voters' pamphlet * * *." This language indicates that one group may file only one argument; however, the statute does not contain any such express limitation and the language does not compel such result.

The purpose of the entire statute, — to inform the voters, — may seem better served by permitting a party to submit as many arguments as it desires. We

conclude, however, that would not be the result in permitting one party to file numerous arguments. Allowing numerous arguments by one group would permit a group with the resources to pay the filing fees or file petitions to inundate the voters' pamphlet with their arguments. These could serve to confuse, rather than enlighten, the voters, particularly on such a complex measure as this one on nuclear energy.

The Secretary of State shall order the Oregonians Against the Ban on Nuclear Energy to withdraw two of the three arguments it submitted.

Nothing stated in this opinion or the other opinions on this subject should be construed to indicate any opinion by this court on the merit of any of the statements contained in the arguments as submitted or as deleted.

The order of the Secretary of State is affirmed as modified.