KERR,
*Respondent,*

*v.*

HALLETT et al,
*Appellants.*

(82-3443-NJ-3; CA A27307)

677 P2d 1098

Eugene F. Hart, Jr., Medford, argued the cause and filed the brief for appellants.

Richard A. Stark, Medford, argued the cause for respondent. With him on the brief were Haviland and Stark, Medford.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Defendants, the Medford city council and city recorder, appeal a circuit court order that, on a writ of review, reversed and remanded to the city council its decision to spread a street assessment for Poplar Drive against petitioner's property. We reverse and remand.

Petitioner owns and lives on a 14,000 square foot, rectangular residential lot in Medford. In 1982, the city opened and improved Poplar Drive, which extends for several thousand feet north from Morrow Road to Crater Lake Highway. Petitioner's west lot line fronts on the east line of Poplar Drive for 164 feet. His south lot line fronts on Morrow Road, an improved street, for 85 feet. Eight other property owners also own property fronting on the east or west sides of Poplar Drive.[1] One of the owners planned to improve its acreage with a shopping center.

By ordinance, the city council spread a street assessment for the improvement of Poplar Drive on a front-footage basis. It assessed petitioner's lot $7,690.69, of which $7,405.26 was for paving.[2] Petitioner timely objected to the council that the improvement would not benefit him, because he already had access to Morrow Road. Petitioner argued that his lot had not been landlocked, as were other lots affected by the improvement, and that because of Poplar Drive those lots enjoyed benefits that petitioner's lot did not. Petitioner told the council, "Maybe sometime later on someone might want to, after I'm gone, might want to do something with the property but that it [is] no benefit to me right now." The council, however, refused to reduce the assessment against petitioner's property.

Petitioner petitioned the circuit court for a writ of review, alleging under ORS 34.040 that (1) substantial evidence in the whole record before the council does not support the ordinance and (2) the council "improperly construed the applicable law," because it did not "inquire into the zoning of each particular property and the use to which the property is being put at the time of the assessment to ascertain whether or

---

[1] See Map on page 331.

[2] Of the total assessment, $285.43 was for a driveway.

not the particular property involved is actually 'benefitted' by the improvement."

The circuit court stated in a memorandum decision accompanying its order:

"It appears to the Court from the transcript of the proceedings held before the City Council that the question of special and peculiar benefit accruing to petitioner's property was raised during the hearing. Petitioner adequately established that his corner lot received less benefit from the improvement than the interior lots on Poplar Drive.

"It is equally clear from the record that no consideration was given by the Council to the Petitioner's special circumstances. In other words, the issue of peculiar benefits was raised then avoided. The result reached with respect to Petitioner's property reflects a misapplication of applicable law."

ORS 223.389 provides:

"* * * If the council determines that the local improvement shall be made, when the estimated cost thereof is ascertained on the basis of the contract award or city departmental costs, or after the work is done and the cost thereof has been actually determined, the council shall determine whether the property benefited shall bear all or a portion of the cost. The recorder or other person designated by the council shall prepare the proposed assessment to the respective lots within the assessment district and file it in the appropriate city office. Notice of such proposed assessment shall be mailed or personally delivered to the owner of each lot proposed to be assessed, which notice shall state the amounts of assessment proposed on that property and shall fix a date by which time objections shall be filed with the recorder. Any such objection shall state the grounds thereof. *The council shall consider such objections and may adopt, correct, modify or revise the proposed assessments and shall determine the amount of assessment to be charged against each lot within the district, according to the special and peculiar benefits accruing thereto from the improvement,* and shall by ordinance spread the assessments." (Emphasis supplied.)

In *Western Amusement v. Springfield,* 274 Or 37, 545 P2d 592 (1976), the court discussed the scope of review in cases of this nature:

"We have reviewed special assessments in all sorts of proceedings, — writs of review, suits for injunction, declaratory judgments, and suits to quiet title. Regardless of the nature of the review proceeding, we have consistently used the same approach:

" '* * * We held that the city council's determination that property has been benefited by an improvement and the amount of the benefit is conclusive unless the court can say that the city council's action was palpably arbitrary and abusive. We said that the burden of persuading the court is a heavy one. * * *.' *Gilbert v. City of Eugene,* 255 Or 289, 292, 465 P2d 880 (1970), summarizing *Stanley v. City of Salem,* 247 Or 60, 427 P2d 406 (1967)." 274 Or at 41.

The court explained the rationale supporting its reluctance to interfere with decisions of local governments respecting assessments:

"The clear and consistent policy of our decisions has been to be very reluctant to interfere with the decisions of the local governments that certain property has been benefited and, therefore, should be assessed.

"There are probably several reasons why the courts, including this court, have adopted this policy of restraint. While making special assessments is correctly classified as a quasi-judicial function, analytically, it also has aspects of an exercise of the legislative function. *Boyle v. City of Bend,* [234 Or 91, 101, 380 P2d 625 (1963)]. The local government imposes a tax when it specially assesses. The imposition of a tax is the excercise of a legislative function. The decision to tax is not subject to judicial review. *Boyle v. City of Bend, supra* (234 Or at 101).

"We have stated that the distinction between judicial and nonjudicial functions should be made on practical considerations; that is, it should be classified as a judicial function if it is a function for 'which the judicial machinery is adaptable.' *Boyle v. City of Bend, supra* (234 Or at 102). We have stated courts are adaptable to deciding whether property has been benefited by a special improvement.

"However, the problem of what property is specially benefited by an improvement is, on its fringes, difficult to solve. Courts have no more expertise in making this determination than city councils or county commissioners, aided by staffs with at least some expertise.

"* * * * *

"Special assessments are a frequently used means to finance local improvements. This frequency, added to the perplexing problem of deciding when certain property is benefited and how much, would cause a substantial amount of litigation if the judiciary made an unrestrained entry into the arena." 274 Or at 42-43.

The court added, however:

"Regardless of our judicial reluctance to intervene, the state legislature has provided that the determination cannot be sustained unless supported by 'substantial evidence.'" 274 Or at 43.

The "special and peculiar benefits" mentioned in ORS 223.389 are those that accrue to the real property, not to its current owner. The present use of the property is not determinative:

"The test must be, would the value be enhanced if the property were put to its highest and best use?" *Stanley v. City of Salem,* 247 Or 60, 66, 427 P2d 406 (1967).

*See also Wing v. City of Eugene,* 249 Or 367, 378-79, 437 P2d 836 (1968). The council may consider any reasonably anticipated prospects for future use of the land. *Western Amusement v. Springfield, supra,* 274 Or at 45. The ordinance spreading the assessment, however, must be based on substantial evidence in the record, that is " "* * * such relevant evidence as a reasonable mind might accept as adequate * * *' to support the conclusion that plaintiffs' land would be 'specially benefitted' by the proposed improvements." *Chrysler Corp. v. City of Beaverton,* 25 Or App 361, 366, 549 P2d 678 (1976), quoting *Bay v. State Board of Education,* 233 Or 601, 378 P2d 558 (1963).

Contrary to the circuit court's statement, the council did consider the particular circumstances of petitioner's lot and whether there were special and peculiar benefits accruing to it. After petitioner had objected to the proposed assessment against his lot, the council considered at length that petitioner owned a small corner lot, different in size and location from the other lots along Poplar Drive, that the lot already had access by Morrow Road and that there were other corner lots affected by the improvement. It also discussed alternative methods of spreading the assessment against corner lots and

the implications of spreading the assessment against petitioner's lot on a different basis than against other lots along Poplar drive. The council also considered what benefits from the improvement might accrue to petitioner's lot, that the lot was proposed on the comprehensive plan for R-3 zoning, which permits multi-family dwelling units,[3] and that the property to the south and east of petitioner's lot was already zoned R-3. The record shows that the council considered the highest and best use of petitioner's lot, decided that it was multi-family residential and recognized that single-family residences can be expected to be torn down and replaced by multi-family dwellings and that petitioner's lot might be consolidated with a neighbor's into a larger tract.

■    There was, therefore, substantial evidence in the record before the council that supports the ordinance and from which it could determine that the improvement would benefit petitioner's lot, that it would provide increased accessibility and make the conversion to multi-family use feasible, that the lot would benefit in the future if petitioner or a successor decided to convert the land to multi-family residential use and that petitioner and his neighbor could consolidate their lands to further that development. We also conclude that the council properly construed the applicable law and determined the amount of the assessment against petitioner's lot according to the "special and peculiar benefits" accruing to it from the improvement.

Reversed and remanded with instructions to dismiss writ of review.

---

[3] R-3 zoning is residential permitting multi-family dwellings, up to five units. Medford City Code § 10-160.